## CASTLE v LOCKWOOD-MACDONALD HOSPITAL

1. EXECUTORS AND ADMINISTRATORS—POWER TO SUE—RELATION BACK.

An order of the probate court giving the special administratrix of an estate the power to commence actions on behalf of the estate will relate back to the date the action was filed even though the statute of limitations ran out between the date of filing the action and the date the empowering order was entered, where the administratrix acted in good·faith and had some reasonable grounds for believing she had been authorized to commence the action, and where her appointment as special administratrix was solely for the purpose of bringing the action.

2. PHYSICIANS AND SURGEONS—MALPRACTICE—ACCRUAL OF ACTION.

A claim based on malpractice accrues when the professional service is discontinued; the statute of limitations begins running with the completion of the last treatment for the matters out of which the claim for malpractice arose (MCLA 600.5838).

3. FRAUD—FRAUDULENT CONCEALMENT—DEFINITION.

Fraudulent concealment means the affirmative employment of artifice, planned to prevent inquiry or escape investigation, and mislead or hinder acquisition of information disclosing a right of action.

4. FRAUD—FRAUDULENT CONCEALMENT—PHYSICIANS AND SURGEONS.

A doctor did not fraudulently conceal a cause of action in negligence for the death of a man who fell or jumped from a hospital window by indicating that he thought the deceased was a suicide where the doctor listed accidental fall as the cause of death on the death certificate and wrote a letter to the

REFERENCES FOR POINTS IN HEADNOTES

[1] 31 Am Jur 2d, Executors and Administrators § 718.

Statute of limitations: effect of delay in appointing administrator or other representative on cause of action accruing at or after death of person in whose favor it would have accrued, 28 ALR3d 1141.

[2-5] 61 Am Jur 2d, Physicians, Surgeons, and Other Healers § 182 *et seq.*

[3] 37 Am Jur 2d, Fraud and Deceit § 144 *et seq.*

man's widow indicating the man was in a condition totally unlike that of a suicide minutes before he was found missing.

5. PLEADING—COMPLAINT—MALPRACTICE—NEGLIGENCE—LIMITATION OF ACTIONS.

A complaint charging that defendant-doctor "contrary to the common and good practice of competent and skilled physicians" allowed his patient to be placed next to an open, low-silled, unguarded window is a complaint in malpractice, which is barred after two years, and not a complaint in general negligence, for which a three-year statute of limitations applies (MCLA 600.5805).

Appeal from Emmet, Edward H. Fenlon, J. Submitted Division 3 January 6, 1972, at Grand Rapids. (Docket No. 10318.) Decided May 24, 1972.

Complaint by Emma Castle, as personal representative of the estate of Stanley B. Castle, against Lockwood-MacDonald Hospital and Dr. Gerald A. Drake for wrongful death. Accelerated judgment for defendants. Plaintiff appeals. Affirmed in part, and reversed and remanded in part.

*Dreyer & Porter,* for plaintiff.

*Clare L. Gillett,* for defendants.

Before: FITZGERALD, P. J., and R. B. BURNS and TARGONSKI,* JJ.

TARGONSKI, J. This case involves a wrongful death action. The deceased was a patient in the intensive care room on one of the upper floors of the defendant Lockwood-MacDonald Hospital. During the night of May 17, 1967, the deceased fell or jumped to death from a window in the room. Thereafter, the following sequence of events transpired.

─────────────

* Former circuit judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

On May 14, 1970, pursuant to her petition, Emma Castle, widow of the deceased, was appointed special administratrix of her husband's estate by the Otsego County Probate Court.[1] Then, on May 15, 1970, Emma Castle, as personal representative of the estate, commenced a wrongful death action in the Emmet County Circuit Court against the defendants, alleging: that the defendant hospital was negligent in maintaining in the room an open, low-silled window without any screen or bar, and without proper observation of the deceased; that defendant Dr. Drake, the deceased's personal physician, failed to exercise due care and skill in allowing Mr. Castle to be placed in a dangerous location, next to an open, unguarded window, and in failing to remove the deceased from the room or requiring the correction of the dangerous condition.

On May 16, 1970, service of process was made on both the defendant hospital and the defendant doctor.

Subsequently, on May 21, 1970, Dr. Drake filed a motion for accelerated judgment pursuant to GCR 1963, 116.1(5) claiming the plaintiff's action is barred by the two-year statute of limitations for actions charging malpractice.

On June 3, 1970 the defendant hospital filed a motion for accelerated judgment pursuant to GCR 1963, 116.1(1), (2), and (5), claiming the circuit court lacked jurisdiction of the person of the defendant, the subject matter, and that the alleged claim was barred by the statute of limitations. Following this motion, the defendant hospital then filed an amended motion on June 5, 1970, for accelerated judgment adding as a ground GCR 1963, 116.1(3), that the plaintiff lacked the legal

---

[1] Bond was filed and letters of special administration were issued.

capacity to sue. The defendant hospital specifically relied on the records of the probate court for the County of Otsego which show: that even though Emma Castle was appointed special administratrix on May 14, 1970, the reason for the appointment being, "the chief asset of said estate is a cause of action for the death of said deceased, upon which the Statute of Limitations shortly runs", that at no time before the filing of the motion for accelerated judgment was an order entered by the probate court granting the special administratrix authority to institute this lawsuit.

Following this motion, on June 11, 1970, Otsego County Probate Judge Boyd C. Baird entered an order reading:

"That on May 14, 1970 a petition for appointment of special administrator was filed in this court on the above captioned matter. That on that date Emma Castle was appointed special administrator.

"That at the time of filing the aforesaid petition it was expressly indicated to this court and understood by this court that the sole reason for the appointment of said special administrator was for the purpose of instituting suit for the wrongful death of the deceased, upon which cause of action the statute of limitations would shortly run.

"That it was the express purpose of this court in appointing the special administratrix that she take legal action pending the appointment of a general administrator.

"It is ordered that the said Emma Castle specifically institute suit on the cause of action for wrongful death of the decedent.

"It is further ordered that such order shall be effective *nunc pro tunc* as of May 14, 1970".

Then on June 15, 1970, Judge Baird appointed Emma Castle general administratrix of her husband's estate.

Finally, in a written opinion dated August 31, 1970 Emmet County Circuit Judge Edward H. Fenlon made the following five findings:

"(1). That Emma Castle as personal representative of the Estate of Stanley B. Castle, deceased, at the time of instituting the said action on May 15, 1970, was without the capacity to sue. That her authority was limited as provided by MCLA 702.61 [MSA 27.3178(131)].

"(2). That the *nunc pro tunc* order of the Probate Court for the County of Otsego issued on June 11, 1970, following defendants' motion for accelerated judgment, was and is invalid.

"(3). That as to defendant Lockwood-MacDonald Hospital, the statute of limitations applicable to this action was three years from the date the cause of action arose, or from May 17, 1967, the statute thus having run on May 17, 1970. MCLA 600.5805(7) [MSA 27A.5805(7)]. That on said date, plaintiff was without capacity to sue and the said order of June 11, 1970, did not toll the statute.

"(4). That as to defendant, Gerald A. Drake, M.D., if plaintiff's action is predicated on the theory of ordinary negligence, the three-year statutes and findings above noted are applicable.

"(5). That if the said action is one alleged malpractice, the statute of limitations is two years, MCLA 600.5805(3) [MSA 27A.5805(3)] from May 17, 1967, or if plaintiff's allegation of concealment is accepted, the statute commenced running on June 6, 1967, and expired on June 6, 1969."

In conformance with his findings, on September 9, 1970, Judge Fenlon ordered that each of the defendants' motions for accelerated judgment be granted and the cause dismissed with prejudice. Thereafter, plaintiff took this appeal.

Plaintiff's first argument is that as special administratrix, even though she failed to procure the proper court order, she had the capacity to sue in this wrongful death action. Plaintiff advances

three separate theories for this proposition. First, that her failure to procure the order could not be collaterally attacked in a wrongful death action. Second, that the *nunc pro tunc* order[2] of the probate court was valid as such and not subject to collateral attack. Third, that the *nunc pro tunc* order[3] was a valid order which effectively "related back" to her appointment as special administratrix apart from the concept of *nunc pro tunc.* On account of the merits found in this last argument, we find it unnecessary to consider the merits of the first two contentions. Our analysis follows.

On May 14, 1970, plaintiff was validly appointed special administratrix in accordance with MCLA 702.60; MSA 27.3178(130). However, as plaintiff concedes, MCLA 702.61; MSA 27.3178(131) calls for a special administrator to obtain an order of the probate court before commencing actions and that such an order was not obtained in this case before the statute of limitation applicable to wrongful death actions expired.[4] MCLA 702.61; MSA 27.3178(131) reads as follows:

"Such special administrator appointed according to the provisions of the preceding section [MCLA 702.60; MSA 27.3178(130)] shall collect all the goods, chattels and debts of the deceased, and preserve the same for the executor or administrator who may afterwards be appointed, and for that purpose, *upon order of the probate court, may commence and maintain actions as an administrator,* and may sell such perishable and other personal estate as the probate court may order to be sold. All personal actions, the cause of which does by law survive and which may be pending either for or against the deceased, may be proceeded with and be

[2] Of June 11, 1970.

[3] *Id.*

[4] The three-year statute of limitation, MCLA 600.5805(7); MSA 27A.5805(7), applies to wrongful death actions. *Rhule v Armstrong,* 384 Mich 709 (1971).

prosecuted by or against such special administrator, and the same proceedings taken as are or may hereafter be provided by law relating to such actions in cases where an executor or general administrator has been appointed." (Emphasis added.)

Plaintiff contends that even though such an order of the probate court authorizing the commencement of this wrongful death action was not obtained prior to the apparent running of the statute of limitation on May 17, 1970, the June 11, 1970 order of the probate court granting permission "related back" to the date of appointment on May 14, 1970, so as to cure any defects subsequent to that appointment.

The doctrine of "relation back" is not new. It is generally applied in the following situation:

"[W]henever letters of administration or testamentary are granted, they relate back to the intestate's or testator's death, and all previous acts of the representative that were beneficial in their nature to the estate, and that were in their nature things that he could have performed had he been duly qualified at the time, are validated." 31 Am Jur 2d, Executors and Administrators, § 162, p 94.

Further, in a great majority of the cases in this country when the doctrine of "relation back" has been considered, it has been held that such an appointment made after the statute of limitation has run against a claim will relate back to validate actions taken on the claim within the statutory period by the person subsequently appointed administrator thus barring reliance upon the defense of limitations by the party against whom the claim is asserted on behalf of the estate. Such result has been reached in wrongful death actions. *Kiley v Lubelsky,* 315 F Supp 1025 (1970). See 3 ALR3d 1234. The apparent reason for the applica-

tion of the doctrine of relation back as a means of defeating the defense of the statute of limitation is the desire of the courts not to have valid claims avoided by legal technicalities provided the administrator acted in good faith and had some reasonable grounds for believing he had been duly appointed. See *Kiley v Lubelsky, supra;* 3 ALR3d 1234.

A review of the many cases which follow the majority view by accepting the doctrine of "relation back" would unduly lengthen this discussion. Some of these decisions include: *Graves v Welborn,* 260 NC 688; 133 SE2d 761 (1963); *Griffin v Workman,* 73 So 2d 844 (Fla, 1954); *Douglas v Daniels Bros Coal Co,* 135 Ohio St 641; 22 NE2d 195 (1939). Representative cases taking the minority view include: *Kiley v Lubelsky, supra; Glenn v E I Dupont De Nemours & Co,* 254 SC 128; 174 SE2d 155 (1970); *Pearson v Anthony,* 218 Iowa 697; 254 NW 10 (1934).

Although there are many decisions that either accept or reject this doctrine, the doctrine of "relation back" is a relatively novel concept in this state.[5] Some consideration of this theory and appli-

---

[5] This statement is deserving of some qualification. While the doctrine of "relation back" is a relatively novel concept in respect to deficiencies in the proper appointment of administrators and executors, relation back is a very important concept in our court rules dealing with pleadings. See *Doan v Chesapeake & O R Co,* 18 Mich App 271 (1969). The doctrine of "relation back" is specifically found in GCR 1963, 118.4 stating that:

"Except for the purpose of demanding a trial by jury under subrule 508.2, the amendment relates back to the date of the original pleading whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading."

The doctrine of "relation back" was devised by the courts to associate amendments with the date of the original pleading, so that it would not be barred by the statute of limitation whenever the claim or defense asserted in the amendment arose out of the conduct, transaction or occurrence set forth or attempted to be set forth in the original pleading. Furthermore, the application of this doctrine in

cation is found in *Whiting v Neuman,* 11 Mich App 201 (1968). In *Whiting,* the administratrix was appointed by an order of the Ingham County Probate Court. She commenced a malpractice action in Ingham County Circuit Court under the wrongful death act. Later, it was discovered that neither plaintiff's decedent nor the defendant were residents of Ingham County at the time of death but rather of Eaton County. Upon its own motion, the Ingham County Probate Court revoked the letters of administration granted to the plaintiff. Thereafter, plaintiff was appointed administratrix in Eaton County and began an identical suit in Eaton County. Subsequently, the Ingham County trial judge granted the defendant's motion for summary and accelerated judgments on the grounds that the court had no jurisdiction over the subject matter of the action inasmuch as there was not and never had been a party plaintiff having the capacity to maintain the action in that court. The plaintiff appealed the dismissal in Ingham County. Both the majority and the dissenting opinions stated that the valid appointment of the administratrix by the Eaton County Probate Court related back to the date of the decedent's death and hence validated the action in the Ingham County Circuit Court.[6]

Turning now to the instant case, we think that the reasoning behind the doctrine of "relation back" is sound and applicable to the present facts, even though the facts here are at a slight variance

pleadings satisfies the basic policy of the statutes of limitation, because the transactional base of the claim must still be pleaded before the statute runs, thereby giving defendant notice within the statutory period that he must be prepared to defend against all claims for relief arising out of that transaction. 1 Honigman & Hawkins, Michigan Court Rules Annotated (2d ed), p 416.

[6] However, this case did not involve the expiration of the statute of limitation.

with those usually associated in cases involving this doctrine.[7] It is uncontested that plaintiff was validly appointed special administratrix before the applicable three-year statute of limitation ran. However, plaintiff, in good faith and with reason, apparently mistakenly believed herself equipped with the necessary legal authorization to institute suit as special administratrix. The reason behind this confusion is readily apparent from the language of the June 11, 1970 probate court order, in which the probate court stated, "that at the time of filing the aforesaid petition, it was expressly indicated to this court and understood by this court that the sole reason for the appointment of said special administrator was for the purpose of instituting suit for the wrongful death of the deceased, upon which cause of action the statute of limitations would shortly run", and "that it was the express purpose of this court in appointing the special administratrix that she take legal action pending the appointment of a general administrator".

The basis of defendant hospital's motion for accelerated judgment alleging the lack of legal capacity to sue is purely technical. It has not been prejudiced by the course of events. Defendant hospital has received appropriate notice within the statutory three-year period that it must be prepared to defend against this suit. Therefore, we hold that when a validly appointed special administratrix institutes a wrongful death action, under the mistaken belief that she has been specifically authorized to so act, but thereafter discovers her error and procures the proper authorization by

---

[7] Although we feel that this factual situation receives a stronger support from the doctrine of "relation back" than the usual factual situation where there was not an initial appointment of an administrator.

probate order in satisfaction of MCLA 702.61; MSA 27.3178(131) after the expiration of the applicable statute of limitation, the probate order will relate back to the commencement of the wrongful death action and the action will be deemed properly commenced within the time limited by statute.[8]

Having established that plaintiff's wrongful death action against defendant hospital is not barred by the statute of limitation, we must now determine whether the period of limitation has expired as to defendant Dr. Drake. Plaintiff contends that the three year period of limitation on actions to recover damages for injuries to persons and property provided for in MCLA 600.5805(7); MSA 27A.5805(7) is applicable to Dr. Drake as well as the hospital since the complaint sounds in general negligence as well as malpractice. However, if MCLA 600.5805(3); MSA 27A.5805(3), limiting actions charging malpractice to two years, applies,[9] then the plaintiff argues that the statute does not begin to run until the date of discovery, citing *Winfrey v Farhat,* 382 Mich 380 (1969). Further, she argues that there was fraudulent concealment by Dr. Drake which tolled the period of limitation, citing *Eschenbacher v Hier,* 363 Mich 676 (1961), and *Johnson v Caldwell,* 371 Mich 368 (1963).

In light of the previous discussion, we begin by stating that if it is determined that any part of plaintiff's complaint sufficiently alleges general negligence against Dr. Drake for which the period

---

[8] Plaintiff contends that the probate order should relate back to the date of her appointment as special administratrix. However, we feel that relation back to the date of the commencement of the action is the better result.

[9] Upon a finding that any general negligence has not sufficiently been pled and, consequently, the three-year limitation period is inapplicable.

of limitation is three years,[10] then that part of the complaint will not be barred by the statute of limitation defense. However, any and all allegations that go to malpractice claims will be barred by the two-year statute of limitation found in MCLA 600.5805(3); MSA 27A.5805(3) for the following reasons.[11]

Plaintiff's argument that the statute of limitation on malpractice claims does not begin to run until the date of discovery is totally incorrect. In *DeHaan v Winter,* 258 Mich 293 (1932), the Court held that the statute of limitations commenced running with the last treatment. But in *Johnson v Caldwell, supra,* the Court changed the *DeHaan* rule for the "discovery rule" holding that "the limitation statute or statutes do not start to run until the date of discovery, or the date when, by the exercise of reasonable care, plaintiff should have discovered the wrongful act".

Then the Revised Judicature Act, in MCLA 600.5838; MSA 27A.5838, effective January 1, 1963, adopted the "last treatment rule" of the *DeHaan* case. That statute reads as follows:

"A claim based on the malpractice of a person who is, or holds himself out to be a member of a state licensed profession accrues at the time that person discontinues

---

[10] MCLA 600.5805(7); MSA 27A.5805(7).

[11] Even though in cases involving injuries to persons and property it has been held that the three year statute of limitation, MCLA 600.5805(7); MSA 27A.5805(7), applies.

\* \* \*

"(3) The period of limitations is 2 years for actions charging malpractice.

\* \* \*

"(7) The period of limitations is 3 years *for all other actions* to recover damages for injuries to persons and property." (Emphasis added.)

Consequently, any allegations of malpractice in this wrongful death action are governed by the two-year period of limitations.

treating or otherwise serving the plaintiff in a professional or pseudo-professional capacity as to the matters out of which the claim for malpractice arose."

This return to the *DeHaan* rule by statute was recognized in *Winfrey v Farhat, supra.* However, the Court applied the discovery rule established in *Johnson v Caldwell, supra,* because the plaintiff's claim arose out of an act done prior to January 1, 1963, the effective date of the Revised Judicature Act. Plaintiff in the present case seeks to apply the "discovery rule" based on the *Winfrey* decision without regard to the effect of the Revised Judicature Act, more particularly, MCLA 600.5838; MSA 27A.5838. But since the act out of which plaintiff's claims arise in the present case occurred in 1967, years after the effective date of the Revised Judicature Act, the "last treatment rule" of MCLA 600.5838; MSA 27A.5838 controls.

Next, we find that plaintiff's contention of fraudulent concealment is equally without merit. Fraudulent concealment is a completely distinct concept, apart from the ordinary rules found in malpractice cases. *Johnson v Caldwell, supra.* The effect of fraudulent concealment is also a subject of the Revised Judicature Act, in MCLA 600.5855; MSA 27A.5855, which reads as follows:

"If a person who is or may be liable for any claim fraudulently conceals the existence of the claim or the identity of any person who is liable for the claim from the knowledge of the person entitled to sue on the claim, the action may be commenced at any time within 2 years after the person who is entitled to bring the action discovers, or should have discovered, the existence of the claim or the identity of the person who is liable for the claim, although the action would otherwise be barred by the period of limitation."

Plaintiff, in effect, argues that because Dr.

Drake indicated to her that he thought the deceased's death was due to suicide rather than by accidental fall which was listed on the death certificate, Dr. Drake was attempting to conceal the true facts surrounding the death. However, the fraud sought to be remedied by MCLA 600.5855; MSA 27A.5855 consists of the concealment of the existence of a claim or the identity of a potential defendant. *DiGiovanni v Yacenick,* 9 Mich App 590 (1968). The guidelines followed in determining whether or not a statute of limitation has been tolled by fraudulent concealment by the party charged with the concealment are found in *DeHaan v Winter, supra,* 296: "Fraudulent concealment means employment of artifice, planned to prevent inquiry or escape investigation, and mislead or hinder acquirement of information disclosing a right of action. The acts relied on must be of an affirmative character and fraudulent." *Eschenbacher v Hier, supra,* 681; *Draws v Levin,* 332 Mich 447, 453 (1952); *DiGiovanni v Yacenick, supra,* 596.

The facts here do not fall within these guidelines. Plaintiff concedes that the death certificate lists death as due to accidental fall. Furthermore, if Dr. Drake had entertained any thoughts of fraudulently concealing plaintiff's cause of action for malpractice based upon an accidental fall, it is hardly likely that he would have written the letter to plaintiff in which he described the deceased as being in a condition totally opposite to that of a potential suicide victim, minutes before he was found missing. On the contrary, this description of the deceased's condition would lead one to doubt any suicidal attempt. Thus, there being nothing to substantiate any fraudulent concealment of a *cause of action* for malpractice in relation to the

deceased's death, plaintiff is precluded from relying upon MCLA 600.5855; MSA 27A.5855 as a bar to the defense of the statute of limitation.

Turning now to an examination of the complaint so as to determine what allegations have been brought against defendant Dr. Drake, we find that paragraphs number 10 through 14 pertain to Dr. Drake. They read as follows:

"10. That the defendant, Gerald A. Drake, M.D. was, and still is, a physician licensed to practice medicine in the State of Michigan and represented himself as competent and skilled in the treatment of human ailments, diseases and injuries.

"11. That shortly before May 17, 1967, decedent consulted and employed defendant as such physician, for compensation paid and to be paid therefore, to attend and treat him for the alleviation of a certain ailment with which he was then afflicted.

"12. That the defendant, Gerald A. Drake, M.D., thereupon accepted such employment, and pursuant thereto, undertook and entered upon the treatment of decedent.

"13. That it thereupon became, and was, the duty of defendant, Gerald A. Drake, M.D., in treating plaintiff, to exercise due care and skill according to the common and good practice of competent skilled physicians, and in particular to prevent decedent from being placed in a position which was dangerous to him and contrary to good practice.

"14. That, disregarding his duty on the premises and contrary to the common and good practice of competent and skilled physicians, defendant was guilty of one or more of the following negligent, and unskillful acts and omissions in the treatment of decedent, to-wit:

"A. Defendant doctor allowed decedent to be placed in a dangerous location, that is next to an open, unguarded window.

"B. Defendant doctor allowed decedent to be maintained in said dangerous location and failed to move said decedent from said dangerous location or to direct

the removal of said decedent or the correction of said dangerous condition.

"C. Defendant doctor had knowledge or reasonably should have had knowledge that decedent was in a location dangerous to the decedent.

"D. Defendant doctor failed to maintain proper observation of decedent."

Upon a thorough analysis, we find that the above-listed allegations have been drafted solely with the intent to allege malpractice. While the specific negligent acts and omissions alleged in paragraph number 14 are not matters which involve any medical skill, as they pertain to the allegedly dangerous condition of the open, unguarded window and the lack of proper observation of the deceased, they are prefaced by the language, "disregarding his duty on the premises and contrary to the common and good practice of competent and skilled physicians",[12] which can only imply malpractice here. It is unfortunate in that if plaintiff intended to allege the general negligence of Dr. Drake as a separate and distinct claim from the degree of negligence involved in malpractice, her complaint was not drafted more skillfully to reflect that desire.

For the above reasons, accelerated judgment granted to defendant Dr. Drake is affirmed. However, accelerated judgment granted to defendant Lockwood-MacDonald Hospital is reversed and this case is remanded to the circuit court for appropriate action in accordance with this opinion. Costs are awarded to plaintiff in respect to defendant hospital.

All concurred.

---

[12] This language is also present in paragraph number 13 of the complaint.