Argued and submitted June 8, affirmed December 30, 1982

RENNIE,
*Respondent on Review,*
*v.*
POZZI ET AL,
*Petitioners on Review.*

(TC A7803-03703, CA 19044, SC 28521)

656 P2d 934

Elizabeth K. Reeve, Portland, argued the cause for petitioners on review. With her on the petition was Schwabe, Williamson, Wyatt, Moore & Roberts, Ridgway K. Foley, Jr. and Kenneth E. Roberts, Portland.

Magar E. Magar, Portland, argued the cause and filed the briefs for respondent on review.

ROBERTS, J.

**ROBERTS, J.**

We accepted review of these companion cases *(see Rennie v. Freeway Transport,* 294 Or 319, 656 P2d 919 (1982))* to address an issue common to both: Where an action on behalf of a decedent's estate was timely commenced by one who had been appointed personal representative, but whose appointment was set aside and "held for naught" after the statute of limitations had run on the underlying cause of action, will a subsequent proper appointment relate back in time so as to preserve the estate's cause of action? Resolution of this issue necessitates a reexamination of our decision in *Richard v. Slate,* 239 Or 164, 396 P2d 900 (1964), in which we held on similar facts that there was no relation back.

In early 1976 Eugene Rennie died and his son Richard, the plaintiff herein, was appointed personal representative of the estate. The principal asset of the estate was ten shares of stock in Freeway Transport, a closely-held corporation. On the advice and with the assistance of his lawyers, the law firm named as defendant herein Richard Rennie as administrator of the estate sold the shares in March of 1976 to the defendants in the *Rennie v. Freeway Transport* case. Subsequently, Richard Rennie and his sister executed disclaimers of any and all interest they had in the estate and the entire assets were distributed to Ramona Rennie, the decedent's wife and the only other heir. In January, 1977, the estate was closed and Richard Rennie was discharged as personal representative.

Richard Rennie alleges that in December, 1977, he became aware that the Freeway Transport stock had been grossly undervalued and that the estate had been induced to sell the stock for only a fraction of its true value. For purposes of seeking redress for this alleged injury, Richard Rennie in January, 1978 petitioned to have his father's estate reopened and to have himself reappointed as personal representative. ORS 116.233. An *ex parte* order granting this petition was issued and soon thereafter Richard Rennie, as administrator of the estate, commenced these actions. The complaint against the *Freeway Transport* defendants stated causes of action in fraud and violations of Oregon securities law; the complaint against the defendants here stated a cause of action in legal malpractice.

Various motions and pleadings were interposed until, in mid-1979, the defendants in both cases filed their respective answers. Neither group of defendants challenged plaintiff's capacity or standing to bring the suits; in fact, the defendants here specifically admitted in their answer that "the plaintiff was appointed personal representative of the estate of Eugene David Rennie, deceased * * *." Both, however, through their answers set up general statute of limitations defenses.

In March, 1980, the defendants here filed a motion to set aside the January, 1978, order reopening the estate and appointing Richard Rennie personal representative. The motion was based on defendants' contention that Richard Rennie, having disclaimed all his interest in the estate prior to its original closing, was not an "interested person" empowered under the applicable statutes to petition for reopening. *See* ORS 116.233 and ORS 111.005(19). The court granted the motion and ordered that the reopening order be "set aside and held for naught." Plaintiff did not appeal this order;[1] instead Ramona Rennie immediately repetitioned for reopening. This petition was granted, the estate was ordered reopened, and Richard Rennie was again re-appointed personal representative.

■　　　Defendants in both actions then moved for summary judgment on their statute of limitations defense,[2] contending that, since the original reopening order had been set aside and the subsequent proper one was issued after the statute of limitations had run on the underlying causes of action, the present actions were commenced after the running of the statute and were thus barred. These motions were granted and judgment was entered for defendants in both actions.

---

[1] Plaintiff did petition this court for an alternative writ of mandamus, which we denied. As the Court of Appeals noted, there is a question whether the trial court's order setting aside the reopening and appointment and holding it "for naught" was correct. *See Rennie v. Freeway Transport,* 55 Or App 1008, 1010 n. 2, 640 P2d 704 (1982). Since there was no appeal from this aspect of the case, however, we do not review the order.

[2] The defense that an action has not been commenced within the time limited by statute is waived if it is neither included in a responsive pleading nor made in a prior motion under ORCP 21 A.(9). *See* ORCP 21 G.(2). Here, as noted, defendants in both cases included in their answers the general defense that the actions had not been commenced before the running of the statutes of limitation.

Plaintiff has advanced a number of alternative arguments in support of his contention that the trial court erred in dismissing these actions as time-barred. Because we find his argument based on relation back dispositive, it is unnecessary for us to address his other arguments.

■ Plaintiff's "relation back" argument is that even if due to technical defects and honest mistake he was without capacity to sue at the time these actions were commenced,[3] the second order reopening the estate and reappointing him personal representative should relate back in time, for purposes of the statute of limitations, to the commencement of these actions. Defendants argue that such a "relation back" is precluded by the rule pronounced by this court in *Richard v. Slate, supra.*

In *Richard,* a nonresident of Oregon had been killed in an automobile accident in Yamhill county. Richard applied for and was appointed administrator of the decedent's estate by Multnomah county probate court. He then, as administrator, filed a wrongful death action against the defendants. The defendants challenged Richard's appointment and, after the time limitation had run on the wrongful death action, the probate court set aside the appointment on the ground that it was without jurisdiction over the estate since the decedent was a nonresident with no assets in Multnomah county. Richard immediately applied for

It is evident in both cases, however, that this was not the statute of limitations defense the defendants intended when their answers were filed. Nevertheless, their raising of the defense was in sufficiently general language to cover this situation and plaintiff has not argued waiver.

[3] Where the probate court has jurisdiction over the estate and the only defect is that error was committed in appointing the personal representative *(i.e.,* one not entitled to the position was erroneously appointed), the appointment is merely voidable and the subsequent revocation of the appointment does not operate to retroactively invalidate all prior acts done by the personal representative on behalf of the estate. *In re Workman's Estate,* 156 Or 333, 354-363, 65 P2d 1395, 68 P2d 479 (1937); *In re Estate of MacMullen,* 117 Or 505, 508-509, 243 P 89, 244 P 664 (1926). Where, however, the court is without jurisdiction over the estate when the appointment is made, the appointment is void *ab initio* and the personal representative's acts on behalf of the estate are generally without effect. *Wink v. Marshall,* 237 Or 589, 392 P2d 768 (1964); *Richard v. Slate, supra.*

The present case falls between these two extremes. Although the court was capable of exercising jurisdiction over the estate, more than erroneous appointment is involved here; the statutory predicate for reopening the estate *(i.e.,* for bringing it back into legal existence) was lacking until Ramona Rennie's petition was filed.

and was properly appointed administrator of the estate in Yamhill county. He then filed an amended complaint setting forth his new appointment. The trial court dismissed the case on the ground that it was time-barred and this court affirmed:

> "The attempted appointment of Richard in Multnomah county was utterly void. No action could be taken by any court that would validate those proceedings so they could be related back to the commencement of this action.
>
> "* * * * *
>
> "In the matter before us, no personal representative existed within the two year period who could maintain the action, nor were there any proceedings commenced for the appointment within that time that could be validated.
>
> "We are, therefore, constrained to hold that, since no personal representative was appointed within the two year period, the attempt to substitute one who had been appointed personal representative after the period had expired was the commencement of a new action." 239 Or at 175.

Plaintiff, to avoid the *Richard* result, argues that *Richard* is distinguishable, or that it has since been legislatively overruled.

The Court of Appeals, based on its conclusion that *Richard* is distinguishable, held that the subsequent reopening order here did relate back and that plaintiff's actions were thus not time barred. In distinguishing *Richard* the court relied on two factors: that *Richard* was a wrongful death case and that the original appointment order there was void for being issued by a court without subject matter jurisdiction over the estate. *Rennie v. Freeway Transport,* 55 Or App 1008, 1011-1013, 640 P2d 704 (1982).

We need not decide whether *Richard* is distinguishable since we conclude that, even if it is on point, it has been legislatively limited or overruled. In particular, we find ORS 114.255, which was enacted subsequent to the *Richard* decision, dispositive:

> "The duties and powers of a personal representative commence upon the issuance of his letters. The powers of a personal representative relate back in time to give his acts

> occurring prior to appointment the same effect as those occurring thereafter. A personal representative may ratify and accept acts on behalf of the estate done by others where those acts would have been proper for a personal representative."

This statute was enacted as part of a major revision of Oregon's probate code and not specifically in reaction to *Richard.* The source of the provision was Uniform Probate Code § 3-701 (formerly U.P.C. § 3-401).

We have not had occasion to apply or interpret ORS 114.255 and the legislative history is not helpful here. The evident purpose of the statute, however, is to facilitate and legitimate beneficial acts done on behalf of the estate which by their nature are necessary or expedient to do in the interim between the decedent's death and the appointment of a personal representative. *See* official comment to U.P.C. § 3-701. The few reported cases involving such a provision deal with acts of this nature. *See, e.g., Brown v. Brown,* 43 Colo App 535, 608 P2d 840, *cert den* (1980). To the extent the statute was intended to have this effect, it appears to be largely a codification of the common law. *See Murray's Estate,* 56 Or 132, 136-137, 107 P 19 (1910); *Casto v. Murray,* 47 Or 57, 65-66, 81 P 388, 81 P 883 (1905); Annot., 3 ALR3d 1234 (1965) and 26 ALR 1359 (1923); 31 Am Jur2d, Executors and Administrators § 162 (1967).

It is not at once clear whether the statute was meant by the legislature to have a broader reach than this. Here, the problem is not that it was necessary or expedient to commence these actions before a proper appointment could be effected; rather, it is that the reopening and reappointment were improperly accomplished and thereafter set aside. Moreover, these actions were commenced by one who was determined to have had neither authority to act on behalf of the estate absent appointment nor standing to petition for its reopening.

The statute's operative term — "relate back" — has a specific legal connotation. In the absence of legislative history to the contrary, the employment of such a term appears to have been, we believe, deliberate with the intent that the statute be interpreted in light of the principles generally associated with it. *See Crooks v. Payless Drug*

*Stores,* 285 Or 481, 490, 592 P2d 196 (1979). In the context of decedents' estates, the usual rationale for the relation back of a personal representative's powers is to enable someone to act on behalf of the estate pending appointment. The subsequent appointment "relates back" in the sense that for all legal purposes the prior act done by the personal representative-to-be on behalf of the estate is deemed to have been done by him or her at that time as personal representative with all the normally attendant powers. Typically, relation back is desired so that those things "necessary or expedient" can be taken care of without the relevant parties having to wait for final appointment. It also has importance, however, where an action is commenced on behalf of an estate and the relevant statute of limitations runs prior to the time when the plaintiff finally accedes to the office of personal representative.

On the issue of whether, in the absence of a statute such as ORS 114.255, the doctrine of "relation back" applies in situations such as this, there is a pronounced split in authority from other jurisdictions. This split antedated the *Richard* decision and is exemplified by Judge Rossman's vigorous dissent in that case. *Richard v. Slate, supra,* 239 Or at 175-189. Without undertaking a thorough review of the recent caselaw, we recognize that, in the absence of a specific statutory provision, a substantial split of authority remains.[4]

---

[4] Many cases have allowed relation back in the situation where the suit was commenced by a person who had properly applied for appointment as personal representative, but whose appointment was not effected until after the applicable statute of limitations had run. *See, e.g., Occidental Life Ins. Co. of California v. Row,* 271 F Supp 920, 925 (SD WV 1967); *Carter v. Southern Ry. Co.,* 502 SW2d 658 (Ky 1973); *Castle v. Lockwood-MacDonald Hosp.,* 40 Mich App 597, 199 NW2d 252, 255-257 (1972); *D'Orazio v. Locust Lake Village, Inc.,* 267 Pa Super 124, 406 A2d 550, 552, *pet den* (1979). There are, however, cases in which relation back was denied even though the plaintiff had subsequently been appointed personal representative. *See, e.g., Ricard v. Birch,* 529 F2d 214, 216 (4th Cir 1975); *Kiley v. Lubelsky,* 315 F Supp 1025, 1028-1029, (D SC 1970); *Strickland v. Mobile Towing & Wrecking Co., Inc.,* 293 Ala 348, 303 So2d 98, 101-102 (1974); *State ex rel. Jewish Hosp. of St. Louis v. Buder,* 540 SW2d 100, 107 (Mo App 1976); *Scott v. Skokie Valley Community Hosp.,* 54 Ill App3d 766, 370 NE2d 107 (1977); *Burcl v. North Carolina Baptist Hosp., Inc.,* 47 NC App 127, 266 SE2d 726 (1980); *Estate of Carrick,* 103 Misc2d 645, 426 NYS2d 939, 941 (1980); *Glenn v. E.I. DuPont de Nemours & Co.,* 254 SC 128, 174 SE2d 155, 159 (1970); *Cockcroft v. Airco Alloys, Inc.,* 276 SC 184, 277 SE2d 587, 589 (1981). *See generally,* Annots., 3 ALR3d 1234 (1965), 8 ALR2d 6, 51 [§§ 25-27] (1949), and 26 ALR 1359 (1923) and the cases cited and discussed therein.

The relation back doctrine is intended to be ameliorative in the sense that the bar of the applicable statute of limitations is avoided where the policies behind the statute would not be furthered by its strict application. Those policies are generally stated to be to prevent the presentation of stale and vexious claims, to discourage the assertion of fraudulent ones, and to end the possibility of litigation after a reasonable time. *Wilder v. Haworth,* 187 Or 688, 695, 213 P2d 797 (1950). Here the defendants were made aware of the nature of Rennies' complaint against them well before the running of the statutes; indeed, through responsive pleadings and motions they had joined the dispute on the merits. Moreover, several additional factors present here militate in favor of relation back and against holding these actions time-barred: plaintiff had in good faith obtained a facially valid court order reopening the estate and appointing him personal representative; he instituted these actions in reasonable reliance upon the order and with the consent of the estate's beneficiary *(i.e.,* not as an officious intermeddler); the actions are potentially beneficial to the estate; the defect invalidating the original order was technical and procedural rather than substantive; there has been no change in the substantive causes of action alleged; and the new personal representative ratified the acts done on behalf of the estate by the former *(viz.,* the commencement of these actions). Thus, the policies behind

---

We could find no recent cases presenting the same factual situation as the case at bar. In *Glenn* and *Cockcroft* the initial administration of the estates had been completed and the administrators discharged when the actions were commenced. The plaintiffs were the ex-administrators suing on behalf of the estate; actual reopening and reappointment in both, however, were not applied for nor accomplished until after the statutes of limitation had run. The courts held the actions barred on the ground that the plaintiffs had been without standing when the suits were commenced and did not acquire standing until after the statutes had run.

Outside the narrow situation where the action was commenced by an administrator-to-be pending appointment on a proper application or where the plaintiff erroneously instituted the action in the wrong capacity, relation back of an appointment for statute of limitation purposes has not generally been allowed. *But see Deupree v. Levinson,* 186 F2d 297 (6th Cir), *US cert den* (1950); *Wilkes-Barre General Hosp. v. Lisho,* 62 Pa Cmwth 222, 435 A2d 1340 (1981). Those cases in which relation back was denied based upon facts similar to those presented here did not, however, involve a statute such as ORS 114.255, at least insofar as we can determine.

the statutes of limitations would not necessarily be served by mandating dismissal here.

■ This court's decision in *Richard v. Slate,* although recognizing the "relation back" doctrine, adopted a position that restricted its application vis-a-vis statutes of limitations. This limited approach to relation back was consistent with caselaw at the time and, as noted, remains so to a certain extent. Nonetheless, we believe the legislature, through its enactment of ORS 114.255, intended that the law in this area be liberalized. Accordingly, we hold that where an action potentially beneficial to an estate was commenced by a person who has good reason to believe that he or she may maintain that action as a duly appointed personal representative, but whose appointment was in fact invalid, then the plaintiff's subsequent accession to the office of personal representative after the statute of limitations has run on the underlying cause of action will relate back in time to the original filing of the action, at least where the defendants have not been prejudiced by the error and there has been no significant change in the claim for relief alleged since the running of the statute. To the extent *Richard* is inconsistent with this interpretation of ORS 114.255, we hold that it has been statutorily overruled.

■ Applying this rule to the facts of this case, it is clear that plaintiff's actions should not have been held time-barred. Plaintiff's appointment as personal representative, albeit after the running of the statute of limitations, related back in time to the commencement of these actions making them valid and timely.[5] Therefore, the summary judgment for defendants must be reversed and this case remanded for further proceedings.[6]

---

[5] Defendants claim that plaintiff's failure to amend the complaint after the valid appointment prevents the appointment from relating back to the original complaint. Defendants were aware of the second, valid appointment and under the theory of relation back the filing date of the original complaint is the crucial point in time for the purpose of the statute of limitations. Under these facts the lack of an amended complaint does not defeat the relation back.

[6] In the companion case of *Rennie v. Freeway Transport,* 294 Or 319, 656 P2d 919 (1982), we affirmed the judgment for those defendants based upon their alternative theory that plaintiff's action against them was barred due to *res judicata.* In this action, defendants as an affirmative defense in their amended answer alleged "[t]hat plaintiff is estopped by [the federal court judgment] from now claiming that the amount for [the Freeway Transport] shares of stock was

## Affirmed.

inadequate and did not represent the true value of said stock." Defendants did not, however, include this defense in their motion for summary judgment and there has been no determination as to any preclusive effect the federal court judgment may have here. It may be that our decision in *Freeway Transport* renders this malpractice action moot or that the judgment in the federal court action has the preclusive effect alleged by defendants, but neither of these issues are properly before this court and we decline to express any opinion as to them.