Argued and submitted September 26, 2005, affirmed September 6, 2006

Patricia R. LOWE,
individually and on behalf of
all similarly-situated persons,
*Appellant,*

*v.*

PHILIP MORRIS USA, INC.;
RJ Reynolds Tobacco Company;
Brown & Williamson Tobacco Corporation;
Lorillard Tobacco Company
and Liggett Group, Inc.,
foreign corporations,
*Respondents.*

0111-11895; A123025

142 P3d 1079

James S. Coon argued the cause for appellant. With him on the briefs was Swanson, Thomas & Coon. On the reply brief was Raymond F. Thomas.

William F. Gary argued the cause for respondents Philip Morris USA, Inc., RJ Reynolds Tobacco Company, Brown & Williamson Tobacco Corporation, and Lorillard Tobacco Company. On the joint brief were Roy Pulvers and Lindsay, Hart, Neil & Weigler, LLP, and Thomas Tongue and Dunn Carney Allen Higgins & Tongue LLP.

Douglas G. Pickett and Martin, Bischoff, Templeton, Langslet & Hoffman LLP filed the brief for respondent Liggett Group, Inc.

Before Landau, Presiding Judge, and Linder and Ortega, Judges.

LANDAU, P. J.

## LANDAU, P. J.

Plaintiff, a long-time cigarette smoker, filed a complaint for negligence against defendants, who are cigarette manufacturers. She alleged no current injury. Instead, she alleged that her accumulated exposure to cigarette smoke has increased her risk of contracting lung cancer some time in the future. That risk, she alleged, creates a current need for medical monitoring and smoking cessation treatment, which defendants should now be ordered to provide. Defendants moved to dismiss the complaint on the ground that plaintiff's complaint fails to state a claim for negligence. According to defendants, under Oregon law, a necessary element of any negligence claim is an allegation of present physical injury. Plaintiff argued that her present risk of future injury suffices to establish the injury requirement. The trial court agreed with defendants and dismissed the complaint. Plaintiff appeals, arguing that the trial court erred in dismissing the complaint. We affirm.

### I. FACTUAL BACKGROUND

■    We review the dismissal of a complaint for failure to state a claim as a matter of law. *L. H. Morris Electric v. Hyundai Semiconductor*, 187 Or App 32, 35, 66 P3d 509 (2003). We assume the truth of all allegations in the pleading, as well as any inferences that may be drawn from them, and view the allegations and inferences in the light most favorable to plaintiff, the nonmoving party. *Id.*

Plaintiff has smoked cigarettes for more than five "pack years." That is, she has smoked the equivalent of one pack per day for five years. She has attempted to quit smoking many times, always unsuccessfully. Defendants manufacture cigarettes for sale in Oregon.

Plaintiff filed a complaint against defendants for negligence. It is denominated a "class action," although to date no class has been certified. According to the allegations of that complaint, defendants were negligent in, among other things, "manufacturing and selling a product that defendants knew or should have known contained toxic and hazardous substances likely to cause lung cancer."

Plaintiff does not now suffer from lung cancer. Nor has she ever been diagnosed with lung cancer. Nor does she allege any other adverse or ill effect on her health caused by her smoking. She alleged in her complaint, however, that, as a result of defendants' negligence, she and others like her "have suffered injury in that they have been significantly exposed to proven hazardous substances in defendants' cigarettes, and suffer significantly increased risk of developing lung cancer." She then alleged that "to minimize future harm from defendants' negligence," she seeks the following relief:

"a. Annual court-supervised medical monitoring of each class member by spiral CT scan to provide for early detection of lung cancer;

"b. Smoking cessation treatment, including behavioral programs and medical regimens that would allow plaintiff and class members to cease using defendants' cigarettes; and

"c. Public education to provide information to class members regarding the benefits of smoking cessation and the benefits of early cancer detection."

According to the allegations of the complaint, periodic medical screening and smoking cessation therapy are "reasonable and necessary" because of her "significantly increased risk of contracting lung cancer as a result of smoking defendants' cigarettes."

Defendants moved to dismiss the complaint for failure to state a claim. ORCP 21 A(8). Defendants argued that plaintiff had failed to allege a cognizable injury, a required element of a claim for negligence under Oregon law. In response to defendants' motion, plaintiff argued that she had alleged the requisite injury in the form of a current need for treatment occasioned by the increased risk of lung cancer that results from smoking defendants' cigarettes.

At the hearing on defendants' motion, the trial court questioned plaintiff about the nature of the injury that she is alleging in her complaint. Plaintiff replied that "[i]t's not physical injury." Instead, she explained, "in our case, we allege that that is future injury." She stated that the injury is the fact that, according to statistical studies, a significant

portion of long-time smokers will eventually develop lung cancer. At the conclusion of the hearing, the trial court announced that it would grant the motion to dismiss, explaining that, "in Oregon, a present injury [is] required."

## II. ANALYSIS

### A. *The parties' arguments*

On appeal, plaintiff argues that the trial court erred in dismissing her complaint. Her arguments on appeal appear to shift somewhat from opening to reply briefs. In her opening brief, she argues that the trial court erred in holding that a present injury is required at all. According to plaintiff, Oregon law recognizes an action in negligence to recover not merely actual harm, but also threatened harm. "[U]nder ordinary principles of the common law of negligence," plaintiff argues, "defendants are responsible for plaintiff's reasonable efforts *to avert future harm threatened by defendants' conduct.*" In the opening brief, plaintiff characterizes medical monitoring as a "remedy" that is "reasonable and necessary for plaintiff * * * because of [her] significantly increased risk" of harm.

In her reply brief, however, she argues that her need for medical testing occasioned by the risk of future harm is itself a present harm. In plaintiff's words, the "need for medical monitoring is a sufficient present injury to support a claim for common law negligence without present physical injury." Plaintiff acknowledges that no Oregon court has yet reached that conclusion, but she insists that it is consistent with existing law and comports with what she characterizes as "the clear majority" rule among other jurisdictions.

Defendants respond that the former argument, that a mere risk of harm is actionable in negligence, is simply wrong. Oregon law, argue defendants, predicates tort liability on the existence of actual, present, and—subject to limited exceptions—physical harm. Moreover, insist defendants, any deviations from that foundational principle of Oregon law must emanate from the legislative—and not the judicial—process. According to defendants, "[o]nly the legislature, equipped to gather a wider scope of information and better able to resolve varying perspectives, could properly balance

the issues raised by requests for medical screening." As for the argument that the need for medical monitoring is itself a cognizable injury, defendants argue that it was never advanced to the trial court and, accordingly, was not preserved. In any event, they argue, it also is incorrect. In defendants' view, plaintiff's own allegations make clear that medical monitoring is merely the *remedy* that she seeks for her alleged increased risk of harm and does not affect the legal sufficiency of the underlying claim itself.

B.  *Background: "Medical monitoring"*

Whether a defendant may be liable in negligence for so-called "medical monitoring" is a matter of first impression in Oregon. It is, however, an issue that has been the subject of much litigation and scholarly debate elsewhere. We briefly review that debate, as it provides helpful context for the parties' arguments concerning the extent to which medical monitoring should be recoverable under Oregon law.

As Prosser once observed, "[t]he shadow of the past still lies rather heavily on the law of torts." William L. Prosser, *The Law of Torts* 19 (4th ed 1971). That observation is an apt starting point for a discussion of the recoverability of medical monitoring in negligence. For centuries, one of the fundamental principles of tort law has been that liability may not be imposed in the absence of proof of physical injury or property damage. As a more recent edition of Prosser's work on the law of torts explains:

> "Since the action for negligence developed chiefly out of the old form of action on the case, it retained the rule of that action, that proof of damage was an essential part of the plaintiff's case. Nominal damages, to vindicate a technical right, cannot be recovered in a negligence action, where no actual loss has occurred. The threat of future harm, not yet realized, is not enough. Negligent conduct in itself is not such an interference with the interests of the world at large that there is any right to complain of it, or to be free from it, except in the case of some individual whose interests have suffered."

W. Page Keeton *et al.*, *Prosser and Keeton on the Law of Torts* 165 (5th ed 1984).

In recent years, courts have fashioned various exceptions to that general rule. For example, in some circumstances, courts permit recovery in negligence for the infliction of emotional distress without proof of physical harm. *See* Mary Donovan, *Is the Injury Requirement Obsolete in a Claim for Fear of Future Consequences?*, 41 UCLA L Rev 1337, 1354-69 (1994) (chronicling the decline of the injury requirement in negligent infliction of emotional distress claims). But courts around the country continue to recognize that the default position, so to speak, is that tort law requires proof of actual physical injury or property damage.

Beginning in the mid-1980s, some courts recognized an exception to the physical injury rule for "medical monitoring" or "medical surveillance," that is, the cost of future periodic medical examinations intended to facilitate early detection and treatment of any illnesses or diseases caused by exposure to toxic substances. The seminal case appears to be *Friends for All Children, Inc. v. Lockheed Aircraft Corp.*, 746 F2d 816 (DC Cir 1984). In that case, the defendant Lockheed's plane was employed to evacuate Vietnamese children from what was then Saigon at the close of the Vietnam War. The plane decompressed and then crashed, but 149 children survived. An action was brought on their behalf for negligence. The plaintiffs alleged that the decompression and the crash created the risk of future brain disorders, which required present and continued medical monitoring. The Court of Appeals for the District of Columbia Circuit upheld a trial court decision allowing the claim on the grounds that District of Columbia tort law was silent on the subject and that allowing such a remedy serves two important principles: "the deterrence of misconduct and the provision of just compensation to victims of wrongdoing." *Id.* at 825.

Shortly after that, the New Jersey Supreme Court followed suit in the much-cited case of *Ayers v. Township of Jackson*, 106 NJ 557, 525 A2d 287 (1987). In that case, the plaintiffs alleged that toxic chemicals had leached from a municipal landfill into their groundwater. They obtained an award in excess of $8 million to cover medical monitoring expenses, even though they did not claim any present

physical injuries from exposure to the toxic chemicals in their water. In upholding the award, the court explained that

> "[t]he cost of medical surveillance is a compensable item of damages where the proofs demonstrate, through reliable expert testimony predicated upon the significance and extent of exposure to chemicals, the toxicity of the chemicals, the seriousness of the diseases for which individuals are at risk, the relative increase in the chance of onset of disease in those exposed, and the value of early diagnosis, that such surveillance to monitor the effect of exposure to toxic chemicals is reasonable and necessary."

*Id.* at 606, 585 A2d at 312.

Since then, nearly 30 jurisdictions have weighed in on the issue. According to a recent count, there is—contrary to plaintiff's suggestion—no "clear majority" one way or the other. D. Scott Aberson, *A Fifty-State Survey of Medical Monitoring and the Approach the Minnesota Supreme Court Should Take When Confronted with the Issue*, 32 Wm Mitchell L Rev 1095, 1114 (2006). If anything, a bare majority of courts—16 of 29 jurisdictions—reject medical monitoring as inconsistent with the present physical injury requirement of tort law. *Id.*

Among the jurisdictions generally permitting recovery of medical monitoring in the absence of physical injury, there is little unanimity in terms of explanations for departing from the traditional physical injury rule. In some cases—for example, *Friends for All Children, Inc.*, and *Ayers*—there is minimal discussion of the rule and more reliance on what the courts regard as overriding public policies. A few courts justify the decision on the ground that an increased risk of harm is a sufficient "injury" to establish tort liability. *See, e.g., Hansen v. Mountain Fuel Supply Co.*, 858 P2d 970, 979 Utah (1993) ("[T]he injury in question is the increase in risk that requires one to incur the cost of monitoring[.]"). Most reason that the need for treatment occasioned by the increased risk itself is the "injury"—albeit not a physical one—that supports liability for medical monitoring. *See, e.g., Barnes v. American Tobacco Co.*, 161 F3d 127, 139 (3d Cir 1998) (applying Pennsylvania law and concluding that "[t]he injury in a cause of action for medical monitoring is the costs

of periodic medical examinations" (internal quotation marks omitted)).

Among the various decisions permitting recovery of medical monitoring, there is also some divergence of views about the extent of the "risk" that justifies the remedy. Some, such as *Ayers*, permit medical monitoring when "reliable expert testimony" demonstrates a "relative increase in the chance of onset of disease in those exposed" and medical monitoring is "reasonable and necessary." 106 NJ at 606, 525 A2d at 312; *see also Hansen*, 858 P2d at 979 ("Because the injury in question is the increase in risk that requires one to incur the cost of monitoring, the plaintiff need not prove that he or she has a probability of actually experiencing the toxic consequence of the exposure. It is sufficient that the plaintiff show the requisite increased risk."). Others condition the remedy on proof that exposure to a toxic substance has "significantly" increased the risk of serious medical harm to those exposed. *Barnes*, 161 F3d at 138-39. The California Supreme Court allows recovery of medical monitoring only when "the need for medical monitoring is a reasonably certain consequence of the exposure." *Potter v. Firestone Tire and Rubber Co.*, 6 Cal 4th 965, 1006, 863 P2d 795, 823 (1993); *see also Bower v. Westinghouse Electric Corp.*, 206 W Va 133, 140, 522 SE2d 424, 431 (1999) (allowing recovery "where it can be proven that such expenses are necessary and reasonably certain to be incurred as a proximate result of a defendant's tortious conduct").

Some courts also condition allowance of recovery of medical monitoring on proof that there actually are medical tests in existence that make early detection and treatment of disease possible. *In re Paoli Railroad Yard PCB Litigation*, 916 F2d 829, 852 (3d Cir 1990); *Hansen*, 858 P2d at 979 (requiring proof "that a treatment exists that can alter the course of the illness"). Others, however, depart from that requirement and allow recovery of medical monitoring regardless of whether any treatment currently exists. *See, e.g., Bower*, 206 W Va at 142-43, 522 SE2d at 433-34 ("[A] plaintiff should not be required to show that a treatment currently exists for the disease that is the subject of medical monitoring. In this age of rapidly advancing medical science, we are hesitant to impose such a static requirement."

(Internal citations omitted.)); *Redland Soccer Club, Inc. v. Department of the Army*, 548 Pa 178, 196 n 8, 696 A2d 137, 146 n 8 (1997) (same).

Among the courts rejecting medical monitoring claims in the absence of an allegation or proof of physical injury, the analysis generally has been more uniform: such claims are inconsistent with the general rule of tort liability requiring proof of physical harm. The Michigan Supreme Court's decision in *Henry v. Dow Chemical Company*, 473 Mich 63, 701 NW2d 684 (2005), is a good example. The court concluded that the plaintiff had failed to state a claim in negligence in asking for medical monitoring after having been exposed to dioxin-tainted flood water without alleging any physical harm that resulted from that exposure. According to the court, "Michigan law requires an actual injury to person or property as a precondition to recovery under a negligence theory." *Id.* at 73, 701 NW2d at 689. In response to arguments that the current need for medical monitoring is itself an "injury," the court replied:

> "It is no answer to argue, as plaintiffs have, that the need to pay for medical monitoring is *itself* a present injury sufficient to sustain a cause of action for negligence. In so doing, plaintiffs attempt to blur the distinction between 'injury' and 'damages.' While plaintiffs arguably demonstrate economic losses that would otherwise satisfy the 'damages' element of a traditional tort claim, the fact remains that these economic losses are wholly derivative of a *possible future* injury rather than an *actual, present* injury."

*Id.* at 78, 701 NW2d at 691 (emphasis in original); *see also Witherspoon v. Philip Morris Inc.*, 964 F Supp 455, 467 (DDC 1997) (applying District of Columbia law and concluding that "[w]hether a cause of action or a part of damages requested, medical monitoring requires that the plaintiff have a present injury"); *Hinton v. Monsanto Co.*, 813 So 2d 827, 829 (Ala 2001) ("Although we acknowledge that other jurisdictions have recognized medical monitoring as a distinct cause of action or as a remedy under other tort causes of action, even in the absence of a present physical injury, we do not * * * know how such jurisdictions coordinated that recognition with the traditional tort-law requirement of a present injury."); *Wood v. Wyeth-Ayerst Laboratories*, 82 SW3d 849,

852 (Ky 2002) (rejecting medical monitoring on the ground that "[a] cause of action does not exist until the conduct causes injury that produces loss or damage").

In at least one case, a state appellate court concluded that medical monitoring claims are cognizable in the absence of proof of physical injury, *Bourgeois v. A.P. Green Industries, Inc.*, 716 So 2d 355 (La 1998), only to have the state legislature enact legislation to the contrary, La Civ Code Ann art 2315 (West 2000) ("Damages do not include costs for future medical treatment, services, surveillance, or procedures of any kind unless such treatment, services, surveillance, or procedures are directly related to a manifest physical or mental injury or disease.").

That circumstance in particular, and the lack of uniformity in the case law in general, has prompted a number of commentators—both supporters and opponents of medical monitoring claims—to suggest that courts should refrain from even entertaining the issue of whether to permit medical monitoring in the absence of physical injury and should instead leave the matter to state legislatures. *See, e.g.*, Aberson, 32 Wm Mitchell L Rev at 1123 ("[B]ecause of the extraordinary considerations involved with the medical monitoring issue in particular, the legislature is better equipped than courts to deal appropriately with the issue."); David C. Campbell, *Medical Monitoring: The Viability of a New Cause of Action in Oregon*, 82 Or L Rev 529, 530 (2003) ("[R]ecent case law suggests that the lack of uniformity among courts regarding medical monitoring necessitates rejection of the proposed tort until decided otherwise by the legislature."); James A. Henderson and Aaron D. Twerski, *Asbestos Litigation Gone Mad: Exposure-Based Recovery for Increased Risk, Mental Distress, and Medical Monitoring*, 53 SC L Rev 815, 843-44 (2002) (questioning whether courts are "institutionally capable of determining the true social costs, in the form of increased needs for medical surveillance, of public exposure to toxic substances"). At least one federal court has followed the suggestion and deferred to the legislature for the creation of a claim for medical monitoring. *Duncan v. Northwest Airlines, Inc.*, 203 FRD 601, 605-06 (WD Wa 2001) ("The Washington Supreme Court has traditionally deferred to the state legislature for the creation of new causes of action.").

## C. *Medical monitoring and Oregon law*

With the foregoing discussion of the rationales for and against allowing recovery of medical monitoring in mind, we turn to the question whether medical monitoring may be recovered under Oregon law.

At the outset, we pause to address defendants' argument that we should not even consider the issue because it entails "complex and competing policy considerations [that] can properly be weighed only by a legislative body." In making that argument, defendants echo the concerns that we have just mentioned from academic literature on the subject.

In part, defendants' argument amounts to question begging. By insisting that the matter is subject to the exclusive authority of the legislature, defendants assume that medical monitoring claims are not already permissible under Oregon law. The fact that no Oregon case has yet addressed the point does not necessarily mean that such claims are not consistent with existing law.

In part, defendants' argument also misapprehends the authority of the courts. Merely because legal questions involve matters that are complex or implicate competing policy considerations does not mean that the courts are without authority to decide them and that "only * * * a legislative body" may do so. Hundreds of years of judicially created tort law—including the recognition of new claims—plainly demonstrates the error in defendants' contention. As the Oregon Supreme Court explained in *Nees v. Hocks*, 272 Or 210, 215, 536 P2d 512 (1975), "[t]his court has not felt unduly restricted by the boundaries of pre-existing common-law remedies. We have not hesitated to create or recognize new torts when confronted with conduct causing injuries which we feel should be compensable." *See also Hammond v. Central Lane Communications Center*, 312 Or 17, 30, 816 P2d 593 (1991) ("This court affirms a person's right to be free from severe emotional distress by recognizing (through its exercise of its common-law authority to create or recognize new torts) the common-law tort of intentional infliction of severe emotional distress[.]"); *Humphers v. First Interstate Bank*, 298 Or 706, 721, 696 P2d 527 (1985) (recognizing claim for breach of confidential relationship by mother against physician who revealed mother's identity to child given up for

adoption); *Hinish v. Meier & Frank Co.*, 166 Or 482, 503, 113 P2d 438 (1941) (recognizing claim for intentional invasion of privacy, citing "the common law, with its capacity for growth and expansion and its adaptability to the needs and requirements of changing conditions").

■ That said, we do not address the issues raised in this case completely unconstrained. We are an intermediate appellate court, and we are mindful that the final word about whether to recognize new claims ultimately rests with the Oregon Supreme Court and is further subject to any limitations prescribed by the legislature. Whatever decision we issue, in other words, must not conflict with existing law.

Moreover, although the existence of complex and competing policy considerations may not deprive the courts of *authority* to address the question whether to recognize new claims, we recognize that it certainly may counsel caution in deciding to do so. *See, e.g.*, *Humphers*, 298 Or at 717 n 14 ("Granted that at times a court must decide a new point of law that necessarily will establish either a right in the plaintiff or a privilege or immunity in the defendant, at least we do hesitate long enough to examine the premises for or against a 'new tort.' " (Internal citations omitted.)).

With those preliminary thoughts in mind, we proceed to the legal issues that the parties put before us. As we have noted, plaintiff's arguments on appeal evolve somewhat from opening to reply briefs. She begins by arguing that the trial court erred in concluding that Oregon law requires an allegation of present harm at all and that an allegation of an increased risk of harm suffices. She then argues, apparently in the alternative, that, even if Oregon law requires an allegation of present harm, her allegation of a need for medical monitoring itself satisfies that requirement. We address each of those arguments in turn.

1. *Whether a claim for increased risk of harm is cognizable*

■ Consistently with the general principles of tort liability that we have described, Oregon courts have long held that a fundamental prerequisite of negligence liability under the law of this state is actual, present harm or injury. *Solberg v.*

*Johnson*, 306 Or 484, 490, 760 P2d 867 (1988) (including "plaintiff's harm" among the elements of a negligence claim); *Fazzolari v. Portland School Dist. No. 1J*, 303 Or 1, 17, 734 P2d 1326 (1987) (negligence liability depends on whether conduct "unreasonably created a foreseeable risk to a protected interest *of the kind of harm that befell the plaintiff*" (emphasis added)); *Hall v. Cornett et al.*, 193 Or 634, 643, 240 P2d 231 (1952) ("Damage is the gravamen of * * * an action for negligence."); *Berg v. Hirschy*, 206 Or App 472, 475, 136 P3d 1182 (2006) ("A cause of action for negligence does not arise until the defendant's negligence causes harm and results in damages to the plaintiff.").

In Oregon tort law generally, the requirement of present harm often is described in terms of an "invasion of any legally protected interest of another." *See, e.g., Gaston v. Parsons*, 318 Or 247, 253, 864 P2d 1319 (1994) (so stating); *Cooksey v. Portland Public School Dist. No. 1*, 143 Or App 527, 533, 923 P2d 1328 (1996) (same). In the negligence context, however, "harm" generally refers to *physical* injury. *See, e.g., Branch v. Hensgen*, 90 Or App 528, 531, 752 P2d 1275 (1988) (in a medical negligence case, " ' "[i]njury" in the legal sense means a physical injury' " (quoting *Dortch v. A. H. Robins Co., Inc.*, 59 Or App 310, 319, 650 P2d 1046 (1982))); *see also Whitman-McCoy v. Dept. of Corrections*, 132 Or App 45, 51, 887 P2d 375 (1994) (contrasting requirement of physical injury in negligence cases and lack of physical injury requirement in wrongful discharge cases).

Although the courts of this state have not addressed *per se* whether claims for medical monitoring are cognizable under Oregon negligence law, they have addressed the slightly broader question whether a risk of harm amounts to present "harm" or "injury" in two related contexts.

First, in several statute of limitations cases, the issue has arisen whether an increased risk of harm is "harm" sufficient to trigger the statute. In *U.S. Nat'l Bank v. Davies*, 274 Or 663, 548 P2d 966 (1976), the court considered when the plaintiff's claim against his attorney for negligence accrued. The defendant law firm argued that the plaintiff's claim against it accrued when the plaintiff first learned that the advice that it had received created the risk of future harm

to it. The plaintiff responded that the claim did not accrue until it learned that, in fact, the advice actually caused it harm.

The court agreed with the plaintiff. It first noted, by way of a quotation from an article in the Harvard Law Review, that the "harm" that triggers the statute of limitations is the same "harm" that is an element of every negligence claim:

> " 'The statutory period may begin either when the defendant commits his wrong or when substantial harm matures. This choice, unnecessary where the two events are simultaneous, becomes complex where considerable time intervenes; here the courts have generally looked to the substantive elements of the cause of action on which the suit is based. If the defendant's conduct in itself invades the plaintiff's rights, so that the suit could be maintained regardless of damage—as with a breach of contract and most intentional torts—the statute commences upon completion of the conduct. But if harm is deemed the gist of the action, the occurrence of harm marks the beginning of the period.
>
> " '*Since harm is an element essential to a negligence action, the statutory period should not commence before the incidence of the harm.*' "

*Id.* at 667. *Developments In The Law - Statutes of Limitations*, 63 Harv L Rev 1177, 1200-01 (1950) (emphasis added). The court then quoted from the same portion of Prosser's familiar work on torts that we already have mentioned, that is, that " '[t]he threat of future harm, not yet realized, is not enough.' " *Id.* at 668 (quoting Prosser, *The Law of Torts* at 143).

In a similar vein, in *Repp v. Hahn*, 45 Or App 671, 609 P2d 398 (1979), *rev den*, 289 Or 373 (1980), we addressed whether a wrongful death action was barred by ORS 30.020(1), which requires such actions to be commenced within three years of "the injury" that caused the death. The decedent had developed a mole on her scalp in 1972, and the defendant physician incorrectly diagnosed it as benign. In the summer of 1974, the mole began to grow, and, in 1975, another physician correctly diagnosed it as malignant melanoma. The decedent died a year later. In 1976, the plaintiff

sued the physician who incorrectly diagnosed the decedent. She alleged that the injury occurred in 1974, when the mole began to grow. The defendant argued that the claim was time-barred, because it accrued when he examined—and incorrectly diagnosed—the decedent. The defendant argued that the decedent was "injured" when he "failed to remove the mole, leaving her 'at risk' of developing malignant melanoma." *Id.* at 675.

We rejected the defendant's argument. We concluded that it ran directly counter to the principle stated in *U.S. Nat'l Bank,* in which the court held that " '[t]he threat of future harm, not yet realized, is not enough' to constitute harm, quoting from Prosser, *The Law of Torts* 143 (4th ed 1971)." *Repp,* 45 Or App at 675. We concluded that the plaintiff suffered no actual "injury" until "the mole began to grow," that is, when there was actual, present, physical harm. *Id.* at 676.

The second context in which the courts have addressed the redressability of risk of harm without present, physical injury involves the admissibility of expert testimony about the risk of future harm resulting from physical injury. In *Feist v. Sears, Roebuck & Co.,* 267 Or 402, 517 P2d 675 (1973), a child was injured when a cash register fell from a counter and struck her on her head. The trial court admitted, over the defendant's objection, testimony from a doctor about the possibility that the child could contract meningitis as a result of the physical injury. The Supreme Court affirmed. In doing so, the court explained that there is a difference between the sufficiency of such evidence to establish substantive liability and its mere admissibility; the court stated that, although evidence of a mere increase in risk of future harm is not sufficient to establish liability, it may nevertheless remain admissible evidence of future harm that results from present physical harm:

> "It is, of course, an established rule of substantive law that, in order to establish the necessary causal relationship to support recovery in a personal injury case, the evidence must be sufficient to establish that such a causal relationship is reasonably probable and that for this purpose testimony that an injurious consequence is 'possible,' rather than 'probable,' is not sufficient. *Devine v. Southern Pacific,*

207 Or 261, 272, 295 P2d 201 (1956). See also *Barron v. Duke et al.*, 120 Or 181, 194, 250 P 628 (1926).

"In 2 Wigmore on Evidence, 776-77, § 663 (1940), the distinction is commented upon as follows:

" '(1)   In comparatively recent years, a few Courts have refused to accept, in personal injury trials, testimony as to the *possible time of persistence of the injury* or the *possible development* of certain consequences. (Emphasis in original).

" '* * *

" '* * * [T]he Courts have in many of these rulings proceeded upon a confused apprehension of a legitimate doctrine of the law of Torts, namely, that recovery may be had for such injurious consequences only as are fairly certain or probable, not for merely possible harm. That is, a Court, in holding that the physician may not testify to possible harmful consequences, is not always ruling that testimony to possible consequences is evidentially improper, but is meaning to rule that such possible consequences are as a matter of substantive law not entitled to consideration at all. This is often the real explanation for such rulings. But the evidential doctrine in question has little standing elsewhere and should not be extended.' "

267 Or at 407-08 (brackets in original).

In both of those categories of cases, the courts clearly have taken as the default position that present, physical harm is the *sine qua non* of negligence liability. And in both categories of cases, the courts have stated that the notion of liability based on a mere risk, or possibility, of future harm, is inconsistent with that foundational assumption of Oregon negligence law.

Plaintiff in this case nevertheless argues that present, physical injury is not required and that a mere risk of future harm suffices to establish the requisite invasion of a legally protected interest in a negligence case. In advancing that argument, plaintiff overlooks all of the foregoing case law (in her opening brief, she did not mention even one of the cases) and, instead, seizes on a single phrase in a single decision, *Norwest v. Presbyterian Intercommunity Hosp.*, 293 Or

543, 559, 652 P2d 318 (1982), that an injury to a "legally protected interest" may include "actual or threatened physical harm."[1] We find plaintiff's reliance on the *dictum* from *Norwest* unpersuasive.

The issue in *Norwest* was whether a child could recover damages for loss of "parental consortium," that is, loss of a parent's care and custody as a result of the parent's brain damage caused by a physician's negligence. The court began by reviewing cases in which it had recognized novel claims in the past, citing as examples claims for invasion of privacy, negligent removal of the remains of a deceased spouse, and negligent delivery of a passport that allowed a child to be taken from the country. *Id.* at 558-59. The court then followed with a statement of what it had *not* yet recognized: "But we have not yet extended liability for ordinary negligence to solely psychic or emotional injury not accompanying any actual or threatened physical harm or any injury to another legally protected interest." *Id.* at 559.

Plaintiff's reliance on that sentence is unpersuasive for at least three reasons. First, it is plainly *dictum*. There was no issue about threatened future harm in *Norwest*. Second, as we have noted, the statement expressed what the court had *not* yet regarded as legally sufficient. The statement is thus a negative observation—that Oregon law does not allow recovery for emotional distress without actual or threatened physical harm or injury to another legally protected interest. It is logically fallacious to deduce from that statement that Oregon law *does* recognize recovery for emotional distress in cases in which there is only a threat of future harm. And, indeed, the case law on negligent infliction of emotional distress claims since *Norwest* confirms that the courts of this state do not recognize such claims in the absence of actual, present, physical impact or injury to an independent, legally protected interest. *See, e.g., Simons v. Beard*, 188 Or App 370, 375, 72 P3d 96 (2003) ("In general, albeit subject to limited exceptions, * * * Oregon courts do

---

[1] Even in her reply brief, plaintiff did not mention *U.S. Nat'l Bank*. She did mention *Repp*, but dismissed it as irrelevant because it is a "statutory claim." In the process, however, plaintiff overlooked the fact that, in those cases, the courts stated that the "harm" or "injury" that triggers the statute of limitations is the same "harm" or "injury" that is an element of the substantive claim.

not permit the recovery of damages for negligently inflicted emotional distress in the absence of some related physical injury."). Third, elsewhere in the opinion, the court in *Norwest* itself reaffirmed that "ordinarily negligence as a legal source of liability gives rise only to an obligation to compensate the person immediately injured." 293 Or at 569. Thus, when viewed in context, plaintiff's reading of *Norwest* is untenable.

Plaintiff insists that, at the very least, *Norwest* demonstrates that the court regards "threatened harm" as a type of "legally protected interest." According to plaintiff, that conclusion flows from the court's phrasing of the statement, "actual or threatened physical harm or any injury to *another* legally protected interest." *Norwest*, 293 Or at 559 (emphasis added).

Even assuming that plaintiff were correct that "threatened harm" may constitute a "legally protected interest" in some general sense, it does not necessarily follow that it is the sort of interest that suffices for *negligence* purposes. As we have noted, although the courts have expressed the general requirement of "harm" or "injury" broadly as an injury to a "legally protected interest," in negligence cases, the type of legally protected interests that give rise to liability is—subject to limited exceptions that we will discuss presently—limited to actual, physical harm.

In short, recovery in negligence for a mere increase in the possibility of future harm appears difficult to reconcile with one of the fundamental premises of Oregon negligence law, namely, that the plaintiff must have suffered actual, physical harm.

That does not end the matter, however. As we have noted, the rules of tort liability in general, and of negligence liability in particular, are subject to exceptions. And the question remains whether recovery of medical monitoring in the absence of any physical injury is subject either to such an exception or, if not, nevertheless should be recognized as implicating the same underlying justifications for the exceptions that have been recognized.

■     There are two established exceptions to the physical injury rule that otherwise applies to negligence claims under Oregon law. The first applies to claims for negligent infliction of emotional distress, while the second pertains to negligence claims for purely economic loss.

■     We begin with negligent infliction of emotional distress. In light of the general rule that there can be no liability in ordinary negligence except for actual, physical harm, it would seem to follow that—by definition—there could be no liability for infliction of emotional distress. Under Oregon law, however, the courts have fashioned exceptions to the general rule. First, the courts have determined that there can be recovery for the infliction of emotional distress that was caused by something more than ordinary negligence; that is, a plaintiff can recover damages for emotional distress that was caused either intentionally or by violation of some duty over and above the duty to avoid foreseeable risk of harm, for example, a duty arising from a special relationship. *See generally Hammond*, 312 Or at 22-23 (describing liability for emotional distress caused intentionally or by violation of heightened duty of care).

■     Second, and more pertinent to this case, the courts have recognized claims for emotional distress caused by ordinary negligence, but only if the distress is accompanied by physical impact. Thus, for example, in *Hammond*, the Supreme Court held that a wife could not recover for negligent infliction of emotional distress caused by a negligent response to a 9-1-1 call that resulted in physical harm to her husband, but not to her. *See also Simons*, 188 Or App at 375 (stating general rule requiring physical impact); *Chouinard v. Health Ventures*, 179 Or App 507, 515, 39 P3d 951 (2002) (no recovery for emotional distress caused by failure to initially diagnose cancerous tumor in the absence of manifest physical impact); *McCulloch v. Price Waterhouse LLP*, 157 Or App 237, 252, 971 P2d 414 (1998) (plaintiff could not recover from accountant for emotional distress caused by his negligence); *Flowers v. Bank of America*, 67 Or App 791, 794, 679 P2d 1385 (1984) (plaintiff could not recover for emotional distress caused when restaurant negligently failed to honor his credit card).

The usual explanation for the foregoing rules was stated in a much-quoted portion of Prosser and Keeton's treatise:

> "Where the defendant's negligence causes only mental disturbance, without accompanying physical injury, illness or other physical consequences, and in the absence of some other independent basis for tort liability, the great majority of courts still hold that in the ordinary case there can be no recovery. The temporary emotion of fright, so far from serious that it does no physical harm, is so evanescent a thing, so easily counterfeited, and usually so trivial, that the courts have been quite unwilling to protect the plaintiff against mere negligence, where the elements of extreme outrage and moral blame which have had such weight in the intentional tort context are lacking."

Keeton *et al., Prosser and Keeton on the Law of Torts* at 361. We endorsed the explanation explicitly in *Wilson v. Tobiassen*, 97 Or App 527, 532, 777 P2d 1379 (1989). In that case, we explained that the physical impact rule " 'affords the desired guarantee that the mental disturbance is genuine.' " (Quoting Keeton *et al., Prosser and Keeton on the Law of Torts* at 363.) *See also Metro-North Commuter R. Co. v. Buckley*, 521 US 424, 433, 117 S Ct 2113, 2119, 138 L Ed 2d 560 (1997) (explaining that common-law courts employ rules such as the physical impact rule in order to separate valid, important claims from those that are invalid and to avoid the threat of "unlimited and unpredictable liability").

As with claims for emotional distress, negligence claims for purely economic harm would seem to fall prey to the general rule that requires proof of physical harm. And, in Oregon, that is the general rule. Under what is known as the "economic loss doctrine," one ordinarily is not liable for negligently causing a stranger's purely economic loss without injuring his or her person or property. *Hale v. Groce*, 304 Or 281, 284, 744 P2d 1289 (1987).

In Oregon, however, the courts have fashioned an exception to the general rule. One may be liable in negligence for purely economic harm, but only if the harm is predicated on a heightened duty of the negligent actor to the injured party beyond the common-law duty to exercise reasonable care to prevent foreseeable harm. *Oregon Steel Mills, Inc. v.*

*Coopers & Lybrand, LLP*, 336 Or 329, 340-42, 83 P3d 322 (2004). The courts have looked for a special relationship between the parties that creates a heightened duty on the part of the defendant. *Conway v. Pacific University*, 324 Or 231, 239-40, 924 P2d 818 (1996).

In *Ore-Ida Foods v. Indian Head*, 290 Or 909, 917, 627 P2d 469 (1981), the Oregon Supreme Court explained that the reason for the economic loss rule is, among other things, that permitting such damages would

> "allow limitless recoveries and have ruinous consequences. Such indirect economic losses are too open-ended. Many commentators quote the oft-cited statement of Judge Cardozo that such liability would be * * * liability in an indeterminate amount for an indeterminate time to an indeterminate class."

(Internal quotation marks omitted; omission in original.) By limiting recovery to cases in which the defendant violates a heightened duty to avoid such harm to the plaintiff, the courts have reasoned that the problem of potentially limitless liability can be avoided.

■　　It is perhaps useful to emphasize that, in each case, the court retained the requirement that there be some sort of actual, present harm or injury, even if not physical in nature. Moreover, although the courts refrained from insisting that the harm be physical, they were careful to impose limitations on the exceptions. Those limitations—proof of physical impact or the violation of a heightened duty—serve at least two purposes. First, they enable the courts to separate legitimate claims from speculative or spurious ones. Second, they constrain the possibility of limitless or indeterminate liability.

In light of those considerations, we turn to the question whether plaintiff's claim in this case fits within either of the exceptions that we have described or the principles that they reflect. At the outset, we note that plaintiff expressly alleges that she suffers no actual, physical harm as a result of her cigarette smoking. Her complaint alleges only a "significantly increased risk of contracting lung cancer" some time in the future. Moreover, as we observed at the outset of this opinion, when pressed by the trial judge on this very point,

plaintiff acknowledged that her claim involved no current injury but, rather, the prospect of "future injury" that she might suffer as a result of her smoking.

As pleaded and argued, therefore, plaintiff's allegations do not fall within either of the two exceptions themselves. There is no allegation of actual, present—even non-physical—injury or harm at all. There is only an allegation of the *possibility* of future harm. That, in and of itself, would seem to defeat plaintiff's suggestion that her claim is cognizable under Oregon negligence law, one of the fundamental premises of which is that liability is based on proof of actual, present harm.

It could be argued that, at least in some circumstances, a risk of future harm could be all but certain, or at least more likely than not, and that such a risk warrants consideration as a form of "harm" or "injury" in and of itself. Even assuming that were the case, however, the allegations in this case fall far short of that. As we have noted, plaintiff alleges merely that she confronts an increased risk of future harm that is "significant."

The problem is that, as with the cases involving emotional distress and economic loss, the scope of liability resulting from a mere increase in risk that falls short of probability is virtually limitless. As many courts and scholars addressing the subject have noted, each and every person in contemporary, industrialized society faces significantly increased risks of future harm by merely getting up in the morning and breathing polluted air, drinking coffee, driving in a motor vehicle, eating certain prepared foods, taking over-the-counter and prescription medications, and the like. *See, e.g., Metro-North Commuter R. Co.*, 521 US at 442 (rejecting medical monitoring under Federal Employers Liability Act because, among other things, "tens of millions of individuals may have suffered exposure to substances that might justify some form of substance-exposure-related medical monitoring" resulting in "unlimited and unpredictable liability"); Henderson and Twerski, 53 SC L Rev at 844 ("Given that negligently distributed or discharged toxins can be perceived to lie around every corner in the modern industrialized world, and their effects on risk levels are at best speculative,

the potential tort claims involved are inherently limitless and endless."). Moreover, and again as with the cases involving emotional distress and economic loss, predicating liability on a simple increase in risk—without more—provides no basis on which to separate spurious or speculative claims from legitimate ones. In that regard, we recall that, even in jurisdictions such as California and West Virginia that recognize claims for medical monitoring, it is precisely the foregoing problems—potentially limitless liability and inability to identify valid claims—that has prompted the creation of limiting requirements such as the need to allege that it is "reasonably certain" that medical monitoring is necessary as the proximate result of exposure to toxic substances. *Potter*, 6 Cal 4th at 1006, 863 P2d at 823; *Bower*, 206 W Va at 140, 522 SE2d at 431. There is no such allegation in this case.

We therefore conclude that the allegations of plaintiff's complaint simply do not suffice to establish the harm that is required to establish liability in negligence under Oregon law. We further conclude that those allegations do not fall within any recognized exception to the physical harm requirement. Nor do they warrant creation of a new exception to that requirement.

2. *Whether the current need for monitoring is sufficient to establish the requisite "harm"*

As we have noted earlier in this opinion, plaintiff's reply brief introduces a slightly different argument as to why the allegations of her complaint are sufficient to state a claim in negligence. She argues that, even assuming that Oregon law requires proof of present harm or injury, her need for medical monitoring is itself that present harm or injury.

Defendants respond that the shift in argument is improper. According to defendants, the trial court took some pains to nail down the precise nature of the harm or injury that plaintiff alleged, and in response to those efforts plaintiff conceded that the only harm or injury at issue was the risk of future harm. Under the circumstances, defendants argue, plaintiff's new argument is unpreserved. Even if preserved, defendants argue, the argument is unavailing because there is no authority to support the idea that a need for medical

monitoring occasioned by a mere risk of future harm is cognizable under Oregon law.

We are inclined to agree with defendants that plaintiff's new argument exceeds the fair bounds of what was presented to the trial court. As defendants correctly note, the trial court did expend considerable effort to have plaintiff articulate precisely the nature of the harm or injury that formed the basis of the claim. In response, plaintiff answered that the only harm was the risk of future harm. And, on that basis, the trial court ruled that the complaint was legally insufficient.

But, even assuming for the sake of argument that plaintiff's new contention were fairly presented, it would be unavailing. To say that the current injury is the need for medical monitoring strikes us as merely an exercise in semantics. The current need remains occasioned by a mere risk of possible future harm. In that regard, we find the reasoning of the Michigan Supreme Court in *Henry* to be persuasive. As the court in that case observed, to argue that the need to pay for medical monitoring is itself an injury merely "blur[s] the distinction between 'injury' and 'damages.' " 473 Mich at 77, 701 NW2d at 691.

Aside from that, we are left to consider the precise nature of the current "need" for medical monitoring. It could be argued that, taking the allegations in the light most favorable to plaintiff, her risk of future harm creates current harm in that she is required to pay money for medical monitoring. In one of her briefs, for example, she characterized her harm as "[t]he present need to incur the cost of medical monitoring." As such, however, her harm is purely economic. And, as we have noted, Oregon law does not permit recovery of purely economic loss in the absence of a heightened duty of care. No such duty has been alleged in this case.

Alternatively, it could be argued that plaintiff's need for medical monitoring reflects her current fear or emotional distress that arises from the risk of future harm. Again, however, Oregon law does not permit the recovery of damages for emotional distress in the absence of intentional conduct, a violation of a duty apart from the duty to avoid reasonably foreseeable risks of harm, or physical impact. Plaintiff has

alleged none of those. In other words, however the current "harm" is characterized, it is, at least on the allegations of the complaint before us, legally insufficient.

## III. CONCLUSION

In summary, we conclude that the allegations of plaintiff's complaint are legally insufficient to state a claim for negligence under current Oregon law or any reasonable extension of the principles underlying that law. The complaint fails to include an allegation of actual, present harm of any sort, much less the physical harm that ordinarily is required to state a claim for negligence. The complaint instead rests on the allegation of the need for treatment to redress the mere possibility of future harm. In fact, by relying on the mere possibility of future harm—as opposed, for example, to an allegation of the probability or reasonable certainty of future harm—plaintiff has pleaded her claim in the broadest possible terms, as a review of the case law from other jurisdictions makes clear. In that regard, we emphasize that our holding in this case is a narrow one: As pleaded, plaintiff's claim fails as a matter of law. We leave for another day whether a negligence claim predicated on different allegations as to the risk of future harm and the certainty of the need for treatment is cognizable under Oregon law.

For all of the foregoing reasons, we conclude that the trial court did not err in dismissing plaintiff's complaint.

Affirmed.