Argued and submitted September 5, 2007, decision of Court of Appeals and judgment of circuit court affirmed May 1, 2008

Patricia R. LOWE,
individually and on behalf of
all similarly-situated persons,
*Petitioner on Review,*

*v.*

PHILIP MORRIS USA, INC.;
RJ Reynolds Tobacco Company,
Brown & Williamson Tobacco Corporation;
Lorillard Tobacco Company;
and Liggett Group Inc.,
foreign corporations,
*Respondents on Review.*

(CC 0111-11895; CA A123025; SC S054378)

183 P3d 181

404

James S. Coon, of Swanson, Thomas & Coon, Portland, argued the cause and filed the briefs for petitioner on review.

William F. Gary, of Harrang Long Gary Rudnick PC, Portland, argued the cause and filed the brief for respondents on review Philip Morris USA Inc., RJ Reynolds Tobacco Company, Brown & Williamson Tobacco Corporation, and Lorillard Tobacco Company. With him on the brief were Sharon A. Rudnick, Roy Pulvers, of Lindsay, Hart, Neil & Weigler, LLP, Portland, and Thomas Tongue, of Dunn Carney Allen Higgins & Tongue LLP, Portland.

Justin M. Thorp, of Martin, Bischoff, Templeton, Langslet & Hoffman LLP, Portland, filed the brief for respondent on review Liggett Group, Inc.

Brian S. Campf, of Brian S. Campf PC, Portland, filed the briefs for *amici curiae* Oregon Trial Lawyers Association and American Cancer Society.

P. Arley Harrel, of Williams, Kastner & Gibbs PLCC, Seattle, WA, filed the brief for *amicus curiae* Product Liability Advisory Council, Inc. With him on the brief was Hugh F. Young, Jr., Product Liability Advisory Council, Inc., Reston, VA.

James N. Westwood, of Stoel Rives LLP, Portland, filed the brief for *amici curiae* Coalition for Litigation Justice, Inc., Chamber of Commerce of the United States of America, National Association of Mutual Insurance Companies, Property Casualty Insurers Association of America, American Insurance Association, American Chemistry Council, National Association of Manufacturers, and American Tort Reform Association. With him on the brief were Jerome A. Murphy and Natalia R. Medley, of Crowell & Moring LLP, Washington, DC; Robin S. Conrad and Amar D. Sarwal, of the National Chamber Litigation Center, Washington, DC; Gregg Dykstra, of the National Association of Mutual Insurance Companies, Indianapolis, IN; Ann W. Spragens and Robert J. Hurns, of Property Casualty Insurers Association of America, Des Plaines, IA; Donald D. Evans, of the American Chemistry Council, Arlington, VA; Jan Amundson and Quentin Riegel, of the National Association of Manufacturers, Washington, DC; Sherman Joyce, of the American Tort Reform Association, Washington, DC; Lynda S. Mounts and Kenneth A. Stoller, of the American Insurance Association, Washington, DC.

Thomas W. Brown, of Cosgrave Vergeer Kester LLP, Portland, filed the brief for *amici curiae* Oregon Forest Industries Council and Oregon Restaurant Association.

Janet M. Schroer, of Hoffman, Hart & Wagner, LLP, Portland, filed the brief for *amicus curiae* Associated Oregon Industries.

John M. Groen, of Groen, Stephens & Klinge, LLP, Bellevue, WA, filed the brief for *amicus curiae* Pacific Legal Foundation. With him on the brief was Deborah J. La Fetra, Pacific Legal Foundation, Sacramento, CA.

Before De Muniz, Chief Justice, and Gillette, Durham, Balmer, Kistler, and Walters, Justices.**

KISTLER, J.

Walters, J., concurred and filed an opinion.

---

** Linder, J., did not participate in the consideration or decision of this case.

## KISTLER, J.

Plaintiff brought this action alleging that defendants' negligent manufacture and sale of cigarettes caused her to suffer a "significantly increased risk of developing lung cancer" and that, as a result, it was "reasonable and necessary" for her to undergo "[p]eriodic medical screening." She sought injunctive relief requiring the "creation of a court-monitored program of medical monitoring, smoking cessation and education" for her and approximately 400,000 similarly situated Oregonians. Defendants moved to dismiss plaintiff's complaint on the ground that it did not allege a present physical injury and thus failed to state a claim for negligence. The trial court agreed and entered judgment in defendants' favor. The Court of Appeals affirmed. *Lowe v. Philip Morris USA, Inc.*, 207 Or App 532, 142 P3d 1079 (2006). We allowed plaintiff's petition for review and now affirm the Court of Appeals decision and the trial court's judgment.

We take the facts from plaintiff's second amended complaint.[1] Plaintiff has smoked more than five "pack years" of cigarettes.[2] Defendants negligently manufactured and sold those cigarettes; among other things, they knew or should have known that their cigarettes "contained toxic and hazardous substances likely to cause lung cancer." As a result of defendants' negligence, plaintiff and all similarly situated Oregonians "have suffered injury in that they have been significantly exposed to proven hazardous substances in defendants' cigarettes, and suffer significantly increased risk of developing lung cancer."

The complaint does not allege that plaintiff has suffered any present physical harm as a result of defendants'

---

[1] In reviewing a ruling allowing a motion to dismiss for failure to state a claim, an appellate court assumes that all well-pleaded facts are true and gives the party opposing the motion the benefit of all reasonable inferences that may be drawn from those facts. *See Caba v. Barker*, 341 Or 534, 536, 145 P3d 174 (2006) (stating standard of review).

[2] Although the complaint does not define the term "pack year," one court has explained that "pack year" refers to smoking the equivalent of one pack of cigarettes each day for one year. *See Barnes v. American Tobacco Co.*, 161 F3d 127, 137 n 7 (3d Cir 1998) (explaining concept).

conduct. The complaint alleges only that plaintiff has suffered a "significantly increased risk of developing lung cancer" in the future. In describing the relief that plaintiff seeks, the complaint alleges that the exposure to toxic substances and the resulting increased risk of lung cancer have made it "reasonable and necessary" for her to undergo "[p]eriodic medical screening by spiral [Computerized Tomography (CT) scans]," which provide for "[e]arly detection of lung cancer" and "substantially increas[e] the probability of successful treatment, enhanced life expectancy, and cure." The complaint asked the trial court to certify a class of all Oregonians who have smoked five pack years of cigarettes. The complaint also asked the trial court to "create a court-supervised program [for all class members] to provide medical monitoring by CT scan and smoking cessation therapy, including public education concerning the program."[3]

Defendants moved to dismiss plaintiff's complaint for failure to state a claim. Defendants argued that plaintiff needed to allege a present physical injury in order to state a negligence claim and that she had not done so. Plaintiff responded that a present physical injury is only necessary in order to recover emotional distress damages. In plaintiff's view, she could state a negligence claim, at least for injunctive relief, if some of the class members would suffer lung cancer in the future. The trial court granted defendants' motion to dismiss but gave plaintiff 10 days to decide whether to seek leave to file a third amended complaint. Plaintiff elected not to do so, and the court entered judgment in defendants' favor.[4] *See* ORCP 21 A (authorizing that procedure). The Court of Appeals affirmed, *Lowe*, 207 Or App at 534, and we allowed review to consider whether plaintiff's complaint stated a negligence claim under Oregon law.

Before turning to the parties' arguments, we begin by noting what this case does not involve. This is not a case in

_____

[3] According to the complaint, the class includes approximately 400,000 members, and the "monetary value of the benefits sought by plaintiff and class members totals no more than $74,000 per person," or approximately $29.6 billion for the class.

[4] Because the trial court ruled that plaintiff's allegations failed to state a claim for which relief may be granted, it did not decide whether to certify a class.

which plaintiff has alleged that she has suffered any present physical harm as a result of defendants' negligence and seeks damages for her fear of developing cancer, for the increased risk of developing cancer that she faces, or for the costs of medical care to determine the extent of her harm. In such a case, as defendants conceded below, a plaintiff could obtain damages for those harms upon proper proof. *See Zehr v. Haugen*, 318 Or 647, 656-57, 871 P2d 1006 (1994) (recognizing that, when a defendant's negligence causes bodily injury, the plaintiff can recover damages for past, present, and future medical expenses, bodily injury, and emotional distress).[5] Rather, plaintiff alleges only that a significantly increased risk of developing lung cancer in the future as a result of defendants' negligence makes it reasonable and necessary for her to undergo periodic medical monitoring. Accordingly, the question before us is whether those allegations state a sufficient harm to give rise to a negligence claim.

■        Over the course of this litigation, plaintiff has characterized the harm that gives rise to her claim differently. As the Court of Appeals noted, plaintiff argued before the trial court that a significantly increased risk of contracting lung cancer in the future is, by itself, a sufficient harm to state a negligence claim. On appeal, she focused on an additional harm. She contended that, as a result of defendants' negligence, she needs to undergo periodic medical monitoring for lung cancer and that the economic cost of that monitoring constitutes a sufficient present harm to give rise to a negligence claim. We first consider whether a significantly increased risk of future physical injury is a sufficient harm to state a negligence claim. We then turn to whether the economic cost of undergoing medical monitoring is sufficient.

---

[5] We note that this case differs from cases such as *Friends for All Children v. Lockheed Aircraft*, 746 F2d 816, 825 (DC Cir 1984), where the court allowed a medical monitoring claim when children suffered "explosive decompression" and oxygen deprivation during an airplane crash but manifested no apparent physical injury. As we understand the court's decision, it held that the oxygen deprivation and the decompression were sufficient harms to give rise to a negligence claim for medical treatment to determine whether those harms had resulted in brain damage. *Id.* at 825-26. In this case, plaintiff has not alleged that she suffered any comparable present physical effects as a result of smoking defendants' products that would require us to decide whether those effects were sufficient to give rise to a medical monitoring claim.

■ Not all negligently inflicted harms give rise to a negligence claim. *See Hammond v. Central Lane Communications Center*, 312 Or 17, 22-23, 816 P2d 593 (1991) (psychic injury alone insufficient to state negligence claim except in limited circumstances); *Norwest v. Presbyterian Intercommunity Hosp.*, 293 Or 543, 569, 652 P2d 318 (1982) (child's distress caused by negligently inflicted harm to parent insufficient to state negligence claim). Rather, a plaintiff must suffer harm "to an interest of a kind that the law protects against negligent invasion." *Solberg v. Johnson*, 306 Or 484, 490, 760 P2d 867 (1988).

■ Oregon law has long recognized that the fact that a defendant's negligence poses a threat of future physical harm is not sufficient, standing alone, to constitute an actionable injury. As this court has explained, "the threat of future harm, by itself, is insufficient as an allegation of damage in the context of a negligence claim." *Zehr*, 318 Or at 656; *see also Bollam v. Fireman's Fund Ins. Co.*, 302 Or 343, 347, 730 P2d 542 (1986) (holding that " '[t]he threat of future harm, not yet realized, is not enough' ") (quoting W. Page Keeton, *Prosser and Keeton on the Law of Torts* § 30, 165 (5th ed 1984)). As Prosser explains,

> "Since the action for negligence developed chiefly out of the old form of action on the case, it retained the rule of that action, that proof of damage was an essential part of the plaintiff's case. Nominal damages, to vindicate a technical right, cannot be recovered in a negligence action, where no actual loss has occurred. The threat of future harm, not yet realized, is not enough. Negligent conduct in itself is not such an interference with the interests of the world at large that there is any right to complain of it, or to be free from it, except in the case of some individual whose interests have suffered."

Keeton, *Prosser and Keeton on Torts* at 165 (footnotes omitted). Accordingly, a plaintiff's cause of action does not accrue, and the statute of limitations on that cause of action does not begin to run, until the plaintiff has suffered an " 'actual loss.' " *Bollam*, 302 Or at 347 (quoting *Prosser and Keeton on Torts* at 165).

The question of when negligent exposure to toxic substances causes a sufficient harm to give rise to a negligence claim can present complex issues of science and law. *Cf. Doe v. American Red Cross*, 322 Or 502, 512, 910 P2d 364 (1996) (stating that a person negligently infected through a blood transfusion with the human immunodeficiency virus had suffered a harm that would give rise to a negligence claim). The specific allegations in the case before us do not require us to explore the outer reaches of those issues, however. Plaintiff has not alleged that her exposure to defendants' products has resulted in any present physical effect, much less any present physical harm. Nor has she alleged that any future physical harm to her is certain to follow as a result of that exposure. Rather, she has alleged only that her exposure to defendants' products has significantly increased the risk that she will contract lung cancer sometime in the future. It is sufficient for the purposes of this case to hold only that, under *Zehr* and *Bollam*, the threat of future physical harm that plaintiff has alleged is not sufficient to give rise to a negligence claim.

Plaintiff argues, however, that two of this court's cases have recognized that an increased risk of harm is sufficient to state a negligence claim. She relies initially on a statement from *Norwest*. In that case, a child brought an action to recover emotional distress damages against a physician and hospital whose negligence had permanently disabled his mother. 293 Or at 545. The child's claim faced two potential hurdles. First, the only harm that the child experienced as a result of the defendants' negligence was emotional distress. *Id.* at 558. Second, the distress that the child asserted "ar[ose] solely as a consequence of a [physical] injury to another person." *Id.* at 559. The court concluded that the fact that the child sought to recover only for emotional distress "[a]rguably" did not bar his negligence action, *id.* at 559, but held that the second hurdle—that the child's distress arose solely as a consequence of a physical injury to another person—did bar his claim, *id.* at 569.[6]

---

[6] The court recognized that, because the defendants' negligence arguably "infringed some legally protected interest apart from causing the claimed distress," the fact that the child suffered only emotional distress as a result of his mother's injury did not provide a clear basis for saying that he could not state a negligence

In discussing the first issue, the court explained that it had permitted recovery for psychic injury alone either for certain intentional torts or when the defendant's negligence "infringed some legally protected interest apart from causing the claimed distress." *Id.* at 558-59. The court observed, however, that it "[h]ad not yet extended liability for ordinary negligence to solely psychic or emotional injury not accompanying any actual *or threatened physical harm* or any injury to another legally protected interest." *Id.* at 559 (emphasis added). Relying on the emphasized part of the last sentence, plaintiff argues that "threatened physical harm," such as a risk of developing cancer, can constitute a cognizable injury in a negligence case.

Plaintiff reads that statement for more than it is worth. The plaintiff in *Norwest* did not seek to recover emotional distress damages for any actual or threatened physical injury to himself. The negative implication of the sentence on which plaintiff relies at most held open the possibility that a threat of imminent physical harm—a negligently driven car, for instance, that swerves off the road and narrowly misses a bystander—might give a bystander who suffers only psychic injury as a result an actionable claim for negligence. We need not decide how the statement in *Norwest* relates to this court's later decision in *Hammond* in order to conclude that the statement provides no support for plaintiff's position in this case. Plaintiff's claim does not involve a threat of an imminent physical harm. Rather, plaintiff alleges only that defendants' negligence may or may not give rise to physical harm at some indefinite point in the future. *Norwest* provides no assistance to plaintiff.

Plaintiff also relies on a statement from *Joshi v. Providence Health System*, 342 Or 152, 149 P3d 1164 (2006). Her reliance on that case is misplaced as well. The issue in *Joshi* was whether evidence that the defendant's negligence had reduced a patient's chance of survival by 30 percent was sufficient to prove that the defendant's negligence had caused the patient's death. *See* 342 Or at 156-57 (stating

---

claim against the defendants. *Norwest*, 293 Or at 559. The court accordingly focused on the other hurdle that the child's claim faced, *viz.*, he sought to recover for harm caused solely as a consequence of an injury to another person.

issues). There was no question in *Joshi* that the patient had suffered a physical injury: The patient had died. The only question was whether the evidence was sufficient, for the purposes of the wrongful death act, to permit a jury to find the necessary causal connection between the defendant's negligence and the patient's death. Interpreting the word "cause" in the wrongful death act, the court held that the evidence was not sufficient. *Id.* at 164. The court held out the possibility, however, that "deprivation of a 30 percent chance of survival may constitute an injury" outside the context of the wrongful death statute. *Id.* Considered in context, the court's statement left open the question whether "deprivation of a 30 percent chance of survival" would be sufficient proof of causation if the plaintiff suffered an injury that did not lead to death. That statement goes to the causal connection necessary to prove negligence, not the type of injury necessary to state a negligence claim.

■       Our precedents establish that the threat of future harm that plaintiff has alleged is not sufficient to give rise to a negligence claim. The question that remains is whether the other harm that plaintiff has identified—having to undergo periodic medical monitoring—is sufficient. On that question, plaintiff notes that she alleged that medical monitoring is reasonable and necessary, and she contends that it is "perfectly reasonable to infer that such monitoring has a cost." We agree that the inference concerning cost is a reasonable one and turn to the question whether the cost of medical monitoring is a sufficient injury to state a negligence claim.

This court repeatedly has recognized that " '[o]ne ordinarily is not liable for negligently causing a stranger's purely economic loss without injuring his person or property.' " *Oregon Steel Mills, Inc. v. Coopers & Lybrand, LLP*, 336 Or 329, 341, 83 P3d 322 (2004) (quoting *Hale v. Groce*, 304 Or 281, 284, 744 P2d 1289 (1987)). Instead, "liability for purely economic harm 'must be predicated on some duty of the negligent actor to the injured party beyond the common law duty to exercise reasonable care to prevent foreseeable harm.' " *Id.* (quoting *Onita Pacific Corp. v. Trustees of Bronson*, 315 Or 149, 159, 843 P2d 890 (1992)). Plaintiff has not alleged an injury to her person or property, nor has she identified any duty that defendant owes her beyond the

common-law duty to exercise reasonable care. Under *Oregon Steel Mills* and a long line of this court's cases, the present economic harm that defendants' actions allegedly have caused—the cost of medical monitoring—is not sufficient to give rise to a negligence claim.[7]

Plaintiff's argument, as we understand it, reduces to a claim that we should modify existing negligence law to require defendants to bear the cost of medical monitoring. On that point, the court has explained:

> "This court generally will reconsider common-law doctrines in three situations: (1) when an earlier case was 'inadequately considered or wrong when it was decided'; (2) when statutes or regulations have altered an 'essential legal element assumed in the earlier case'; or (3) when the earlier rule was based on specific facts that have changed."

*Juarez v. Windsor Rock Products, Inc.*, 341 Or 160, 168, 144 P3d 211 (2006) (quoting *G.L. v. Kaiser Foundation Hospitals, Inc.*, 306 Or 54, 59, 757 P2d 1347 (1988)). Plaintiff does not argue that any of those three situations applies here. Instead, she notes that courts from other jurisdictions have divided over this question, and she urges us to adopt the reasoning of the decisions allowing actions for medical monitoring.[8]

We have reviewed the decisions favoring plaintiff's position, as well as those favoring defendants'. The decisions from other jurisdictions are divided, and there are well-reasoned arguments on both sides of the issue. *Compare Hansen v. Mountain Fuel Supply Co.*, 858 P2d 970 (Utah 1993); *Potter v. Firestone Tire and Rubber Co.*, 6 Cal 4th 965, 863 P2d 795 (1993); *Ayers v. Jackson Township*, 106 NJ 557, 525 A2d 287 (1987) (all recognizing medical monitoring claims), *with Henry v. Dow Chem. Co.*, 473 Mich 63, 701 NW2d 684 (2005); *Wood v. Wyeth-Ayerst Laboratories*, 82

---

[7] Plaintiff argues that the rule in *Oregon Steel Mills* should not apply to this case because she was a direct, not a third party, victim of defendants' negligence. Plaintiff's argument is difficult to square with *Hale* and *Oregon Steel Mills*. Both cases held categorically that purely economic harm is not sufficient to state a negligence claim without some source of duty outside the common law of negligence. *Oregon Steel Mills*, 336 Or at 341; *Hale*, 304 Or at 284.

[8] The parties and commentators disagree over the exact number of jurisdictions on each side of the issue.

SW3d 849 (Ky 2002); *Metro-North Commuter Railroad v. Buckley*, 521 US 424, 117 S Ct 2113, 138 L Ed 2d 560 (1997) (all rejecting medical monitoring claims; the last case rejecting a medical monitoring claim seeking damages rather than injunctive relief). We need not decide which line of decisions we might find more persuasive if this were a case of first impression. Our precedents control this issue, and the differing decisions from the other jurisdictions do not provide a basis for overruling Oregon's well-established negligence requirements. *See G.L.*, 306 Or at 58-59 (declining to modify common-law precedent).

Following our precedents, we hold that negligent conduct that results only in a significantly increased risk of future injury that requires medical monitoring does not give rise to a claim for negligence. The trial court correctly dismissed plaintiff's complaint for failure to state a negligence claim, and the Court of Appeals correctly affirmed the trial court's judgment.

The decision of the Court of Appeals and the judgment of the circuit court are affirmed.

**WALTERS, J.,** concurring.

The majority concludes, and I agree, that plaintiff's complaint fails to state a claim for relief because plaintiff does not allege that she has suffered present physical harm. I write separately only to call attention to the fine point that the majority has drawn.

First, the majority does not reject medical monitoring as a remedy in a negligence action, and Oregon law may well permit it. As the court illustrated in *Friends for All Children v. Lockheed Aircraft*, 746 F2d 816, 825 (DC Cir 1984), current tort principles permit diagnostic testing:

> "Jones is knocked down by a motorbike which Smith is riding through a red light. Jones lands on his head with some force. Understandably shaken, Jones enters a hospital where doctors recommend that he undergo a battery of tests to determine whether he has suffered any internal head injuries. The tests prove negative, but Jones sues Smith solely for what turns out to be the substantial cost of the diagnostic examinations."

Medical monitoring is simply a continuing series of diagnostic tests used to determine the extent of the injury and the appropriateness of treatment.[1] In Oregon, a plaintiff in a negligence action may recover the costs of diagnostic testing, *see Zehr v. Haugen*, 318 Or 647, 656-57, 871 P2d 1006 (1994) (recognizing that, when a defendant's negligence causes bodily injury, the plaintiff can recover damages for past, present, and future medical expenses, bodily injury, and emotional distress), and there is no reason that such a plaintiff could not also recover medical monitoring costs.

Second, the majority does not define the term "present physical harm," nor does it conclude that, to allege "present physical harm" and maintain a claim for medical monitoring, a plaintiff must necessarily allege that the harm has resulted in manifest symptoms. In my view, a plaintiff who alleges that he or she has experienced a physical impact or harmful physical effect has alleged sufficient present physical harm to permit the filing of an action and recovery of medical costs, including medical monitoring costs. For example, a plaintiff who alleges a blow to the head has alleged present physical harm and may bring a negligence action even though the plaintiff may not allege immediate symptoms beyond the pain of the impact. Plaintiffs who suffer similar impacts should also be entitled to recover not only the expenses of immediate treatment, if any, but also the costs of medical monitoring tests to determine the extent of the injury and whether it is subject to treatment. *See Friends for All Children*, 746 F2d at 825 (plaintiffs suffered explosive decompression in airplane crash and had risk of Minimal Brain Dysfunction);[2] *Feist v. Sears, Roebuck & Co.*, 267 Or

---

[1] Medical monitoring has been defined as "'a form of surveillance based on repetitive use of the same test or test group to detect a specified change in the patient indicating a change in his prognosis or need for treatment or a change in his treatment.'" Victor E. Schwartz, Leah Lorber, and Emily J. Laird, *Medical Monitoring: The Right Way and the Wrong Way*, 70 Mo L Rev 349, 351 (2005) (quoting Myrton F. Beeler & Robert Sappenfield, *Medical Monitoring: What Is It, How Can it Be Improved?*, 87 Am J Clinical Pathology 285, 285 (Myrton F. Beeler et al, eds., 1987)).

[2] In *Friends for All Children*, the court stated that medical monitoring should be available "even in the absence of physical injury[.]" 746 F2d at 825. I am not certain what the court meant by that. In the hypothetical that that court used, for example, Jones did strike his head on the pavement, causing what seems evident to be "present physical injury," even though that injury may not have been

402, 412, 517 P2d 675 (1973) (plaintiff injured when cash register fell on her head entitled to damages, including damages for future susceptibility to meningitis).

Similarly, if a foreign substance that creates a risk of future harm is injected into a plaintiff's body and causes detectable physical effects, that plaintiff also suffers present physical harm, even if he or she does not suffer any immediate symptoms of harm whatsoever. *See Doe v. American Red Cross*, 322 Or 502, 506, 515, 910 P2d 364 (1996) (court implicitly assumed that decedent negligently given HIV-infected blood had suffered present physical injury and could have brought negligence action as of date he tested positive for HIV, even though there was no indication that he suffered medical symptoms of harm at that time); *Herber v. Johns-Manville Corp.*, 785 F2d 79, 81, 83, 88 (3d Cir 1986) (jury found physical injury when plaintiff exposed to asbestos had developed pleural thickening, even though plaintiff had no asthma or wheezing and was under no medical treatment; court concluded that jury should have been permitted to consider whether plaintiff was entitled to medical monitoring damages for risk of developing cancer).

In many, if not most, of the cases in which courts have permitted negligence actions to recover the costs of medical monitoring, the plaintiffs have alleged physical impacts or effects such as those described in *Friends for All Children, Feist, Doe*, and *Herber*. *See, e.g., Hansen v. Mountain Fuel Supply Co.*, 858 P2d 970, 973 (Utah 1993) (plaintiffs experienced coughing, wheezing, shortness of breath, chest tightness, headaches, and severe eye irritation as a result of their exposure); *Mauro v. Raymark Industries, Inc.*, 116 NJ 126, 129-30, 561 A2d 257, 258-59 (1989) (plaintiff diagnosed with pleural asbestosis); *Ayers v. Township of Jackson*, 106 NJ 557, 589, 525 A2d 287, 303 (1987) (exposure to chemical caused adverse effects on genetic material within

---

permanent. And the case before the court involved children who had been in a plane crash; they had been subjected to explosive decompression and a subsequent crash landing that shattered the plane into four large pieces, apparently killing roughly half of the people on board. *Id.* at 819. Those children suffered a physical impact just as serious as that caused by the striking of the head on the pavement, and I do not understand why they would not be deemed to have suffered "present physical injury." Perhaps the court meant, more precisely, that medical monitoring should be available "even in the absence of permanent injury."

plaintiffs' cells); *Hagerty v. L & L Marine Services, Inc.*, 788 F2d 315, 317, 319, *clarified and recons den en banc*, 797 F2d 256 (5th Cir 1986) (plaintiff accidentally drenched by cancer-causing chemicals suffered dizziness, leg cramps, and persistent stinging sensation in extremities).

The existence of a period of time between the initial impacts or effects and the later appearance of symptoms or disease does not alone present a legal impediment to recognizing a plaintiff's negligence claim for medical monitoring costs.[3] Tests can enable physicians to identify the point at which medical treatment would limit a plaintiff's injuries, preserve life, and reduce the amount of damages a defendant could be required to pay. Thus, those tests would benefit all parties in appropriate circumstances. *See, e.g.*, Victor E. Schwartz, Leah Lorber, and Emily J. Laird, *Medical Monitoring: The Right Way and the Wrong Way*, 70 Mo L Rev 349, 352 (2005) (suggesting circumstances in which medical monitoring is appropriate, including when benefits of medical monitoring outweigh risks created by the diagnostic tests themselves).

The scientific and legal challenges that lie ahead may be difficult to address within our current tort framework. One particularly tricky problem is the statute of limitations. There is a tendency to treat the first date that determines when a plaintiff *must* sue as the first date a plaintiff *may* sue. If we permit a plaintiff to sue for medical monitoring costs long before disease becomes manifest, has the plaintiff who waits to bring an action until the disease is apparent waited too long? The purpose of a statute of limitations is to prevent stale claims by defining the *last* date upon which a case may be brought. *See Rennie v. Pozzi*, 294 Or 334, 342, 656 P2d 934 (1982) ("Those policies [underlying statutes of

---

[3] Toxic exposure cases present particularly perplexing problems because of the long latency period that often exists between exposure to a toxin and development of disease. "[T]he average latency period[s] for hazardous substances causing occupational cancers are: arsenic, 25 years; tar, 20-24 years; radiation, 20-30 years; asbestos, 18 years; chromates, 15 years." Allan T. Slagel, *Medical Surveillance Damages: A Solution to the Inadequate Compensation of Toxic Tort Victims*, 63 Ind LJ 849, 852 n 15 (1988) (citing 5B *Lawyers' Medical Cyclopedia of Personal Injuries and Allied Specialties* § 38.46h (3d ed 1986)).

limitation] are generally stated to be to prevent the presentation of stale and vex[at]ious claims, to discourage the assertion of fraudulent ones, and to end the possibility of litigation after a reasonable time."). Therefore, cases that address when a claim accrues for statute of limitations purposes are not necessarily useful in deciding whether a plaintiff should be permitted to bring suit at an *earlier* date. In a negligence action in which the question is the earliest date upon which a plaintiff may seek relief, we face considerations that are distinct from those that are presented when the question is whether a claim has become too stale. Nevertheless, how to accommodate and correctly address both concerns is puzzling. The statute of limitations is only one of many unique issues presented by the "emerging complexities of industrialized society and the consequent implications for human health." *Ayers*, 106 NJ at 579, 525 A2d at 298. We cannot expect that the degree of care used in dispersing or disposing of hazardous chemicals will always be reasonable. In the absence of legislative guidance, we will undoubtedly be called upon to consider how to address claims that negligence in the use of dangerous substances has caused harm that only scientific or medical testing can disclose.

Damage, or harm, is an essential element of a negligence claim. *See* W. Page Keeton, *Prosser and Keeton on the Law of Torts* § 30, 165 (5th ed 1984) (cause of action for negligence requires showing of resulting actual loss or damage). A person who acts negligently without causing damage to another does not so "interfere[ ] with the interests of the world at large that there is any right to complain of it, or to be free from it." *Id.* When science and medicine are able to identify harm before it becomes manifest, and to do so with sufficient certainty, our precedents do not foreclose an action in negligence or the remedy of medical monitoring.