130 Nev., Advance Opinion 98

IN THE SUPREME COURT OF THE STATE OF NEVADA

SUSAN SADLER; AND JACK SADLER, SR., INDIVIDUALLY AND ON BEHALF OF ALL PERSONS SIMILARLY SITUATED,
Appellants,
vs.
PACIFICARE OF NEVADA, INC., A NEVADA CORPORATION,
Respondent.

No. 62111

**FILED**

DEC 31 2014


TRACIE K. LINDEMAN
CLERK OF SUPREME COURT
BY _____
DEPUTY CLERK

Appeal from a district court order granting judgment on the pleadings in a negligence action. Eighth Judicial District Court, Clark County; Susan Scann, Judge.

*Reversed and remanded.*

Marquiz Law Office and Craig A. Marquiz, Henderson; George O. West, III, Las Vegas,
for Appellants.

Lewis Roca Rothgerber LLP and Daniel F. Polsenberg and Joel D. Henriod, Las Vegas; Holland & Hart LLP and Constance L. Akridge and Matthew T. Milone, Las Vegas,
for Respondent.

BEFORE HARDESTY, DOUGLAS and CHERRY, JJ.

*OPINION*

By the Court, HARDESTY, J.:

Following an outbreak of hepatitis C that was linked to unsafe injection practices used in procedures performed at certain health-care facilities in southern Nevada, patients of those facilities who had

14-42522

undergone such procedures were advised to submit to testing for blood-borne diseases, including hepatitis B, hepatitis C, and HIV. This appeal concerns whether, in the absence of a present physical injury, those patients who have so far tested negative for such diseases, or who have not yet been tested, may state a claim for negligence based on the need to undergo ongoing medical monitoring as a result of the unsafe injection practices at these health-care facilities. Because we conclude that such individuals may state a claim for negligence, we reverse the district court's dismissal of the complaint and remand this matter to the district court for further proceedings.

## FACTUAL AND PROCEDURAL BACKGROUND

Appellants Jack and Susan Sadler, on behalf of themselves and a proposed class of similarly situated individuals,[1] filed a complaint in the district court against respondent PacifiCare of Nevada, Inc., a health maintenance organization, asserting claims of negligence and negligence per se on the ground that PacifiCare failed to perform its duty to establish and implement a quality assurance program to oversee the medical providers within its network. In the complaint, the Sadlers alleged that PacifiCare's failure to monitor the medical providers allowed those providers to use unsafe injection practices, including reusing syringes and consequently injecting patients with medications from contaminated vials, which resulted in the Sadlers and the putative class members being "exposed to and/or placed at risk of contracting HIV, hepatitis B, hepatitis C and other blood-borne diseases, requiring subsequent medical

---

[1]No class was certified in the district court before the entry of judgment on the pleadings.

monitoring . . . for infections of the same." As relief for their negligence claims, the Sadlers sought to have the court establish a court-supervised medical monitoring program at PacifiCare's expense.

PacifiCare moved for judgment on the pleadings, arguing that the Sadlers' complaint failed to state a negligence claim on the ground that they had not alleged an "actual injury," such as testing positive for a blood-borne illness. Instead, PacifiCare characterized the Sadlers' claim as one for a risk of exposure. And PacifiCare contended that the Sadlers' fear of injury or illness could not support their negligence claims. The Sadlers opposed the motion for judgment on the pleadings, arguing that the injury that must be alleged to state a tort claim does not need to be a physical injury, as suggested by PacifiCare. The crux of the Sadlers' opposition was that, by asserting that PacifiCare's negligence had caused them to need ongoing medical monitoring, they had alleged a legal injury sufficient to support their negligence claims.

Following a hearing on the matter, the district court granted PacifiCare's motion for judgment on the pleadings. In addressing the question of injury, the district court found it significant that the Sadlers had alleged exposure to blood generally, but had not specifically alleged exposure to infected blood. The court therefore concluded that the Sadlers' claims were based on a risk of exposure to infected blood, which the court found was insufficient to allege an injury. On this basis, the court granted judgment in favor of PacifiCare. This appeal followed.

## DISCUSSION

### Standard of review

Under NRCP 12(c), the district court may grant a motion for judgment on the pleadings when the material facts of the case "are not in

dispute and the movant is entitled to judgment as a matter of law." *Bonicamp v. Vazquez*, 120 Nev. 377, 379, 91 P.3d 584, 585 (2004). Because an order granting a motion for judgment on the pleadings presents a question of law, our review of such an order is de novo. *Lawrence v. Clark Cnty.*, 127 Nev. ___, ___, 254 P.3d 606, 608 (2011). As with a dismissal for failure to state a claim, in reviewing a judgment on the pleadings, we will accept the factual allegations in the complaint as true and draw all inferences in favor of the nonmoving party. *Cf. Buzz Stew, LLC v. City of N. Las Vegas*, 124 Nev. 224, 228, 181 P.3d 670, 672 (2008) (setting forth the standard of review for an order dismissing a complaint under NRCP 12(b)(5)); *see also Bernard v. Rockhill Dev. Co.*, 103 Nev. 132, 135, 734 P.2d 1238, 1241 (1987) (explaining that a "motion for a judgment on the pleadings has utility only when all material allegations of fact are admitted in the pleadings and only questions of law remain").

*Medical monitoring*

The goal of a medical monitoring claim is to require the defendant to pay for the costs of long-term diagnostic testing to aid in early detection of latent diseases that may have been caused by the defendant's tortious conduct. *Bower v. Westinghouse Elec. Corp.*, 522 S.E.2d 424, 429 (W. Va. 1999). This court has previously considered medical monitoring in only one opinion, *Badillo v. American Brands, Inc.*, 117 Nev. 34, 16 P.3d 435 (2001), in which the plaintiffs sought a judgment requiring the defendant tobacco companies to pay for the plaintiffs' ongoing medical monitoring for tobacco-related diseases. *Id.* at 38, 16 P.3d at 438. There, the federal district court certified a question to this court, asking whether Nevada common law recognizes medical monitoring as either an independent tort action or a remedy. *Id.* at 37-38, 16 P.3d at

437. Considering the specific circumstances presented and the way such claims had been treated by other courts, the *Badillo* court concluded that there is no common law cause of action for medical monitoring in Nevada. *Id.* at 44, 16 P.3d at 441. Further, because Badillo had not identified an underlying cause of action, the court did not reach the question of whether medical monitoring is a viable remedy to a tort claim generally. *Id.* at 41, 16 P.3d at 440.

In this case, the Sadlers have specifically sought medical monitoring as a remedy for negligence, and thus, they do not ask this court to consider whether to recognize medical monitoring as an independent cause of action under the circumstances presented here. PacifiCare does not dispute that medical monitoring may be a viable remedy for a properly stated cause of action, but it contends that the Sadlers have not alleged a present physical injury and, therefore, have not sufficiently stated a claim for negligence. As the *Badillo* court did not answer whether medical monitoring is a remedy for negligence, this appeal presents a question of first impression for this court. To address it, we look first to our general negligence law before turning to how other courts have analyzed the injury requirement in the context of medical monitoring as a remedy.

*Negligence*

In order to state a claim for negligence, a plaintiff must allege that "(1) the defendant owed the plaintiff a duty of care, (2) the defendant breached that duty, (3) the breach was the legal cause of the plaintiff's injuries, and (4) the plaintiff suffered damages."[2] *DeBoer v. Senior*

---

[2]As noted above, the Sadlers' complaint alleged both negligence and negligence per se. Because the issue on appeal concerns only whether the
*continued on next page...*

SUPREME COURT
OF
NEVADA

(O) 1947A

*Bridges of Sparks Family Hosp., Inc.*, 128 Nev. ___, ___, 282 P.3d 727, 732 (2012). Thus, the third element of a negligence claim contemplates that the plaintiff has suffered an injury. *See id.* As the district court's order and the parties' arguments have all been limited to whether the injury requirement is satisfied in this case, we similarly limit our inquiry to that issue, leaving the remaining elements of the negligence claims to be considered by the district court on remand.

### Injury generally

The Sadlers argue that they have alleged an injury based on actual exposure to infected blood by asserting that they were exposed to the blood of other patients and that they were "exposed to and/or placed at risk of contracting HIV, hepatitis B, hepatitis C and other blood-borne diseases." Alternatively, the Sadlers argue that, even if they did not allege actual exposure to contaminated blood, they nonetheless have stated a claim for negligence by alleging that PacifiCare injured them by causing them to need ongoing medical monitoring. Conversely, PacifiCare argues that a plaintiff attempting to state a claim for negligence must allege a present physical injury, such that, here, the plaintiffs would be required to allege that they had actually contracted an illness. In granting judgment in favor of PacifiCare, the district court appears to have recognized that an injury may be found on less than a showing of actual illness, but the court declined to find a cognizable injury because the Sadlers had not alleged actual exposure to contaminated blood.

---

*...continued*
Sadlers sufficiently alleged an injury, which would apply to both claims equally, we do not distinguish between the negligence and negligence per se claims within this opinion.

We begin our inquiry with the broad question, which asks whether the injury needed to state a tort claim must be a *physical* injury, or instead, whether some other type of *legal* injury may satisfy that requirement. Although PacifiCare has not argued that the Sadlers' claims were barred by the economic loss doctrine, our review of the parties' respective positions leads us to conclude that this doctrine is implicated by the issue presented, as it is closely related to the injury requirement. In addressing negligence claims, this court has noted that the "economic loss doctrine marks the fundamental boundary between contract law, which is designed to enforce the expectancy interests of the parties, and tort law, which imposes a duty of reasonable care and thereby [generally] encourages citizens to avoid causing physical harm to others." *Terracon Consultants W., Inc. v. Mandalay Resort Grp.*, 125 Nev. 66, 72-73, 206 P.3d 81, 86 (2009) (alteration in original) (internal quotation marks omitted). Thus, under the economic loss doctrine, a plaintiff generally cannot recover on an unintentional tort claim for "purely economic losses." *Id.* at 73, 206 P.3d at 86.

Here, we cannot say that the Sadlers have alleged purely economic losses. While their claims for medical monitoring are based in part on the expense of undergoing such testing, the complaint also alleged that PacifiCare's actions exposed the Sadlers and the other putative class members to unsafe injection practices, putting them at risk for contracting serious blood-borne diseases.[3] This exposure and increased risk are

---

[3]It is important to distinguish here between considering the increased risk of disease as a circumstance demonstrating that the Sadlers may have suffered a noneconomic loss, and viewing increased risk as an independent claim for damages, which some other courts have rejected as

*continued on next page...*

noneconomic detrimental changes in circumstances that the Sadlers alleged they would not have experienced but for the negligence of PacifiCare. As a result, we conclude that the Sadlers' claims are not barred by the economic loss doctrine. Nevertheless, while these changes may constitute something other than economic losses, it still may be said that they do not amount to physical injuries. Thus, we still must determine whether tort law requires that the underlying injury be a physical one.

In *Terracon Consultants*, this court referred to a goal of tort law being to "encourage[ ] citizens to avoid causing physical harm to others," *id.* at 72-73, 206 P.3d at 86 (internal quotation marks omitted), but this court has not previously addressed whether physical harm or physical injury is a necessary element of all tort claims. This court has, however, discussed physical injury in the context of negligent and intentional infliction of emotional distress claims. *See Chowdhry v. NLVH, Inc.*, 109 Nev. 478, 482-83, 851 P.2d 459, 462 (1993); *Nelson v. City of Las Vegas*, 99 Nev. 548, 555, 665 P.2d 1141, 1145 (1983). In that context, this court has required a plaintiff alleging negligent infliction of emotional distress to demonstrate some "physical impact" beyond conditions such as insomnia or general discomfort, *see Chowdhry*, 109 Nev. at 482-83, 851 P.2d at 462, but a physical impact or injury, as opposed to an emotional

---

*...continued*

not satisfying the present legal injury requirement, *see, e.g.*, *Burns v. Jaquays Mining Corp.*, 752 P.2d 28, 30-31 (Ariz. Ct. App. 1987), or as too speculative or difficult to quantify. *See, e.g.*, *Ayers v. Twp. of Jackson*, 525 A.2d 287, 308 (N.J. 1987). Here, the Sadlers have not alleged a cause of action based on increased risk, and thus, whether this court would recognize such a cause of action is outside the scope of our inquiry.

one, has not necessarily been required to state a claim for intentional infliction of emotional distress. *See Nelson*, 99 Nev. at 555, 665 P.2d at 1145 (setting forth the elements for an intentional infliction of emotional distress claim).

As an intentional infliction of emotional distress claim does not require a physical injury, we cannot conclude that such an injury is necessarily a prerequisite to a tort claim generally. *See id.* Conversely, based on the requirements for a negligent infliction of emotional distress claim, we recognize that a physical injury may be required in order to establish certain torts. *See Chowdhry*, 109 Nev. at 482-83, 851 P.2d at 462. We therefore now consider whether a physical injury must be alleged in order to state a claim for negligence with medical monitoring as a remedy. As the parties have not identified, and our research has not revealed, any Nevada authority specifically requiring a party to allege a physical injury in order to state a negligence claim, particularly one that seeks medical monitoring as a remedy, we look to the decisions of other courts for guidance on this issue.

*Physical injury in the context of medical monitoring*

Several courts that have considered this issue have rejected medical monitoring claims primarily on the ground that a physical injury must be shown in order to state such a claim.[4] *See, e.g., Hinton ex rel.*

---

[4]The courts addressing medical monitoring claims have not always clearly distinguished between medical monitoring as an independent cause of action and medical monitoring as a remedy for some other cause of action. Regardless, as our focus herein is on the injury requirement, which is relevant to all of these medical monitoring claims, we do not find it necessary to differentiate between the cases discussing medical monitoring as a cause of action and those applying it as a remedy for a
*continued on next page...*

*Hinton v. Monsanto Co.*, 813 So. 2d 827, 829 (Ala. 2001) (concluding that a plaintiff failed to state a claim in the medical monitoring context when he did not allege a present, physical injury); *Wood v. Wyeth-Ayerst Labs., Div. of Am. Home Prods.*, 82 S.W.3d 849, 856-58 (Ky. 2002) (rejecting a claim for medical monitoring on the ground that traditional tort theory requires a plaintiff to demonstrate a present, physical injury). These cases tend to characterize medical monitoring claims as seeking compensation for the threat of future harm or for increased risk of harm. *See Lowe v. Philip Morris USA, Inc.*, 183 P.3d 181, 184 (Or. 2008). And they therefore conclude that the increased risk of harm and consequent need for medical monitoring are insufficient to constitute a present injury necessary to state a negligence claim. *See id.* at 184-85; *see also Paz v. Brush Engineered Materials, Inc.*, 949 So. 2d 1, 5 (Miss. 2007) ("The possibility of a future injury is insufficient to maintain a tort claim. Recognizing a medical monitoring cause of action would be akin to recognizing a cause of action for fear of future illness.").

We are not convinced that such a restricted view of an injury is appropriate in the present context. As an initial matter, the Restatement (Second) of Torts § 7(1) (1965), broadly defines an injury for the purpose of tort law as "the invasion of any legally protected interest of another." Not only is this definition not limited to physical injury, the same section separately defines "harm" as "the existence of loss or detriment in fact of any kind to a person resulting from any cause," and "physical harm" as "the physical impairment of the human body, or of land

---

*...continued*
different cause of action. Within this opinion, we therefore use the phrase "medical monitoring claims" to refer to both types of cases.

or chattels." *Id.* Thus, while these concepts are related, the differing definitions indicate that they are not interchangeable, and more, that injury is generally not limited to physical injury.

Applying the Restatement's definition of injury, a significant number of jurisdictions have concluded that the costs of medical monitoring may be recovered, either as an independent claim or as a remedy for an established tort, even in the absence of a present physical injury. *See, e.g., Friends For All Children, Inc. v. Lockheed Aircraft Corp.*, 746 F.2d 816 (D.C. Cir. 1984); *Potter v. Firestone Tire & Rubber Co.*, 863 P.2d 795 (Cal. 1993); *Ayers v. Twp. of Jackson*, 525 A.2d 287 (N.J. 1987); *Hansen v. Mountain Fuel Supply Co.*, 858 P.2d 970 (Utah 1993). One of the earliest cases to consider a medical monitoring claim was *Friends For All Children*, 746 F.2d 816. In that case, a group of orphans was being transported out of South Vietnam when a locking system on their aircraft failed, resulting in "an explosive decompression and loss of oxygen" on the plane. *Id.* at 819. Friends For All Children, an organization acting on behalf of the children, filed a complaint against Lockheed Aircraft Corporation, the manufacturer of the airplane, seeking the establishment of a fund to pay the costs for monitoring the children for a neurological developmental disorder that may have been caused by the sudden decompression or the crash itself. *Id.* In opposing the relief sought by Friends For All Children, Lockheed argued that the District of Columbia would not recognize a claim for damages in the absence of a present physical injury. *Id.* at 824.

In addressing this claim, the *Friends For All Children* court first considered a hypothetical question in which an individual, Jones, was knocked down by the negligence of a second party, Smith. *Id.* at 825. The

court reasoned that if Jones went to the hospital and, on the recommendation of his doctors, underwent testing to determine whether he had suffered injuries, Smith would be responsible for the costs of such testing, even if the testing demonstrated that Jones had not actually suffered any physical injuries. *Id.* Following from this hypothetical, and based on the Restatement's definition of injury, the *Friends For All Children* court held that "an individual has an interest in avoiding expensive diagnostic examinations just as he or she has an interest in avoiding physical injury." *Id.* at 825-26. Thus, the court concluded that, when that interest is invaded, the defendant should be required to compensate the plaintiff for that invasion. *Id.*

The California supreme court later applied similar reasoning to a claim for medical monitoring in *Potter v. Firestone Tire & Rubber Co.*, 863 P.2d 795. There, the plaintiffs alleged that the defendant had improperly disposed of toxic waste, exposing the plaintiffs to carcinogens that increased their risk of developing cancer. *Id.* at 801. In opposing the plaintiffs' request for medical monitoring costs, the defendant argued that, even if a present physical injury was not required, the plaintiffs were required to demonstrate that, as a result of the exposure, it was more likely than not that they would develop cancer. *Id.* at 822.

With regard to the need for a present physical injury, the *Potter* court referred back to *Friends For All Children* and the Restatement definition of injury, concluding that these authorities persuasively demonstrated that no physical injury should be required for a medical monitoring claim. *Id.* at 823-24. Moreover, the *Potter* court rejected the argument that the plaintiffs should be required to show a high likelihood that they would develop cancer, concluding instead that a court

considering the availability of a medical monitoring recovery should focus on the reasonableness of the need for medical monitoring. *Id.* at 822-23. Additionally, the *Potter* court outlined several important public policy considerations in support of recognizing a medical monitoring recovery, including deterrence against irresponsible handling of toxic chemicals, preventing or mitigating future illness and therefore reducing overall costs, and serving justice by requiring the responsible party to pay the expenses of reasonable and necessary medical monitoring. *Id.* at 824. Relying on the Restatement, the decision in *Friends For All Children,* these policy considerations, and other similar reasoning, a number of other courts have likewise concluded that a physical injury is not required in order to recover the costs of medical monitoring that is reasonably required as a result of the defendant's tortious acts. *See Ayers,* 525 A.2d 287; *Redland Soccer Club, Inc. v. Dep't of the Army & Dep't of Def. of the United States,* 696 A.2d 137 (Pa. 1997); *Hansen,* 858 P.2d 970; *Bower v. Westinghouse Elec. Corp.,* 522 S.E.2d 424 (W. Va. 1999).

Our consideration of these authorities persuades us to recognize that a plaintiff may state a cause of action for negligence with medical monitoring as the remedy without asserting that he or she has suffered a present *physical* injury. As discussed above, we have not found anything in this court's precedent or in the Restatement's definition of injury that limits an injury only to a physical one. On the contrary, the Restatement definition specifically contemplates "the invasion of *any legally protected interest* of another" as an injury. Restatement (Second) of Torts § 7(1) (1965) (emphasis added). And the Restatement separately defines "physical harm," indicating that physical harm is not necessarily implicated by the term "injury." *See id.* § 7(3).

Further, we agree with the reasoning of the *Friends For All Children* court, which held that an individual has a legally protected interest in avoiding expensive diagnostic examinations. 746 F.2d at 826. And although the expense may be an economic loss, that economic loss is accompanied by noneconomic losses, including unwillingly enduring an unsafe injection practice and the resulting increase in risk of contracting a latent disease and need to undergo medical testing that would not otherwise be required. Moreover, as noted in *Potter*, there are significant policy reasons for allowing a recovery for medical monitoring costs, not the least of which is that early detection can permit a plaintiff to mitigate the effects of a disease, such that the ultimate costs for treating the disease may be reduced. 863 P.2d at 823-24. If medical monitoring claims are denied, plaintiffs who cannot afford testing may, through no fault of their own, be left to wait until their symptoms become manifest, losing valuable treatment time. *See id.* Rather than allowing this result, it is more just to require the responsible party to pay for the costs of monitoring necessitated by that party's actions. *See Friends For All Children*, 746 F.2d at 826 ("When a defendant negligently invades [an individual's legal] interest [in avoiding the need for medical testing], the injury to which is neither speculative nor resistant to proof, it is elementary that the defendant should make the plaintiff whole by paying for the examinations.").

PacifiCare argues that a "need to be tested" is far too broad to constitute a legal injury, and indeed, some of the courts that have declined to recognize medical monitoring claims have expressed concern that allowing such claims will open the floodgates to litigation because "tens of millions of individuals may have suffered exposure to substances that

SUPREME COURT
OF
NEVADA

(O) 1947A

14

might justify some form of substance-exposure-related medical monitoring." *Metro-North Commuter R.R. Co. v. Buckley*, 521 U.S. 424, 442 (1997). We do not consider this concern to be persuasive, however, as any given plaintiff will still be required to plead and prove the essential elements of their underlying claim, including, for the purpose of a negligence claim, that the defendant actually caused the need for medical testing through a breach of a duty owed to the specific plaintiff. *See DeBoer*, 128 Nev. at ___, 282 P.3d at 732.

Further, in order to establish damages for such a medical monitoring claim, a plaintiff will have to show that he or she incurred costs as a result of the defendant's actions. *See id.*; *see also* Restatement (Second) of Torts § 902 (1979) (defining damages as "a sum of money awarded to a person injured by the tort of another"). To satisfy this element, it will be necessary for the plaintiff to demonstrate that the medical monitoring at issue is something greater than would be recommended as a matter of general health care for the public at large. *See Redland Soccer Club*, 696 A.2d at 146 (requiring a medical monitoring plaintiff to demonstrate that the "prescribed monitoring regime is different from that normally recommended in the absence of the exposure"). Otherwise, it could not be said that the need for testing was caused by the defendant's breach, and thus, the element of a negligence claim requiring that the defendant's breach be the legal cause of the plaintiff's injuries would not be satisfied. *See DeBoer*, 128 Nev. at ___, 282 P.3d at 732. Thus, we cannot agree that permitting recovery based on a need to be tested will open up the courts to extensive new litigation from individuals exposed to everyday toxic substances.

Before we move on to address the specific allegations in the Sadlers' complaint, we note that, in recognizing medical monitoring remedies, several courts have identified elements or factors that a plaintiff must satisfy in order to recover the costs of monitoring. *See, e.g., Potter*, 863 P.2d at 823; *Redland Soccer Club*, 696 A.2d at 145-46. At this early stage of the district court action, and in light of our treatment of medical monitoring as a remedy, rather than a cause of action, we decline to identify specific factors that a plaintiff must demonstrate to establish entitlement to medical monitoring as a remedy. Instead, we conclude that, in a negligence action for which medical monitoring is sought as a remedy, a plaintiff may satisfy the injury requirement for the purpose of stating a claim by alleging that he or she is reasonably required to undergo medical monitoring beyond what would have been recommended had the plaintiff not been exposed to the negligent act of the defendant.

*The Sadlers' complaint*

Having concluded that a physical injury is not required to state a negligence claim with medical monitoring as the remedy, we now turn to whether, in light of our decision herein, the Sadlers' complaint sufficiently alleged an injury to state a negligence claim. As noted above, the Sadlers asserted that, as a result of PacifiCare's actions, they were "exposed to and/or placed at risk of contracting HIV, hepatitis B, hepatitis C and other blood-borne diseases." Based on this assertion, the Sadlers argue that they alleged actual exposure to blood-borne diseases, but alternatively, they contend that the allegations regarding their exposure to unsafe injection practices and a need for testing sufficiently alleged an injury. PacifiCare, on the other hand, argues that this statement in the Sadlers' complaint does not amount to an allegation of actual exposure. And PacifiCare asserts that actual exposure to contaminated blood was, at

a minimum, what the Sadlers must have alleged to state their negligence claim.

By using "and/or," the Sadlers failed to connect any particular plaintiff to the allegation that they were "exposed to" a blood-borne disease, as opposed to simply being "placed at risk of contracting" a blood-borne disease without necessarily having been actually exposed to such a disease. *See Gregory v. Dillard's Inc.*, 565 F.3d 464, 473 n.9 (8th Cir. 2009) (explaining that where an allegation referred generally to all plaintiffs and used the "and/or" formulation, it did not "connect any particular plaintiff to any particular allegation"). Thus, we cannot conclude that the Sadlers have alleged actual exposure to a blood-borne disease. Nevertheless, we disagree with PacifiCare that actual exposure to contaminated blood was required.

Because medical monitoring claims largely arise out of the toxic tort area of litigation, most of the cases addressing these claims have involved some form of actual exposure to toxic substances, such as asbestos or potentially harmful chemicals. *See, e.g., Potter*, 863 P.2d 795; *Ayers*, 525 A.2d 287. And several jurisdictions have concluded that a plaintiff must be required to show actual exposure to a known hazardous substance in order to recover on a medical monitoring claim. *See Cook v. Rockwell Int'l Corp.*, 755 F. Supp. 1468, 1477 (D. Colo. 1991) (concluding that the Colorado courts would find a complaint for medical monitoring to be deficient insofar as it failed to alleged that the plaintiffs had actually been exposed to a toxic substance); *Hansen*, 858 P.2d at 979 (providing that to recover medical monitoring damages, a plaintiff must demonstrate exposure to a toxic substance); *Redland Soccer Club*, 696 A.2d at 145 (holding that a plaintiff must prove "exposure greater than normal

background levels . . . to a proven hazardous substance" in order to recover on a medical monitoring claim). Indeed, in the context of a toxic tort action, requiring exposure to a toxic substance is logical, as a plaintiff could not set forth an argument that he or she needed medical monitoring for something to which he or she had not been exposed.

But it cannot be said that exposure to a toxic substance will always be necessary to demonstrate a reasonable need for medical monitoring. In *Friends For All Children*, 746 F.2d at 819, for example, no exposure to toxic substances was involved at all. There, the need for medical monitoring was caused by "an explosive decompression and loss of oxygen" that occurred during an airplane crash and by the airplane crash itself. *Id.* In considering these cases and the concerns at issue, we conclude that the relevant inquiry is not on actual exposure to a toxic substance, but on whether the negligent act of the defendant caused the plaintiff to have a medical need to undergo medical monitoring.

Here, while the Sadlers may not have alleged that they were actually exposed to contaminated blood, they have alleged, and at this stage in the proceedings their allegations must be accepted as true, that they were exposed to unsafe injection practices and that these unsafe injection practices caused them to need to undergo medical monitoring. The injury that they have alleged is the exposure to the unsafe conditions that caused them to need to undergo medical testing that they would not have needed in the absence of the PacifiCare's purported negligence. As demonstrated by this case and *Friends For All Children*, to require a specific exposure to a contaminant would unnecessarily limit the ability of a plaintiff whose need for medical monitoring arises out of something other than direct exposure to a toxic material. Thus, we conclude that the

Sadlers' complaint adequately alleged an injury in the form of exposure to unsafe injection practices that caused a need for ongoing medical monitoring to detect any latent diseases that may result from those unsafe practices.

We therefore further conclude that the district court erred by granting PacifiCare judgment on the pleadings in this case based on the failure of the Sadlers to allege a cognizable injury. As a result, we reverse the judgment on the pleadings and remand this matter to the district court for further proceedings consistent with this opinion.[5]

_____, J.
Hardesty

We concur:

_____, J.
Douglas

_____, J.
Cherry

---

[5]Given our conclusion herein, we need not address the Sadlers' alternative argument that the district court improperly dismissed the medical monitoring claim before they had the opportunity to conduct discovery.